## DEY vs. THE MAYOR AND COMMON COUNCIL OF JERSEY CITY.

1. The common council of Jersey City consists of a board composed of ten aldermen. Their only existence is as a board, and they can do no valid act except when organized and acting as a board, and such act must be by ordinance, or resolution, or something equivalent thereto.

2. When an ordinance of the city properly passed, authorizes the common council to make contracts for the removal of night soil from the city, such contract must be made by the common council as a board or body, by a vote or assent of a majority of the body; and if such contract is authorized by a resolution, it is a resolution which affects the interests of the city, and must be presented to the mayor for his signature.

3. A contract for such purpose, made by a committee of the common council, with no authority but such resolution not presented to or approved by the mayor, is made without authority and is void; and part performance of such contract, at the request of the committee, will not give validity to it, although it might obviate the defect of its being made by parol, when required to be in writing.

On demurrer.

*Mr. Gilchrist,* in support of the demurrer.

*Mr. McCarter,* for complainant, contra.

THE CHANCELLOR.

The bill in this case is to compel the specific performance of a contract, and to enforce payment for services hitherto rendered under the contract. The complainant claims that the defendants are bound to enter into a contract with him for five years, by which he is to furnish them with barges, and to remove the night soil from the city, daily, and the defendants are to pay him the sum of $530 per month. The bill sets forth at length and distinctly, the matters which are alleged to constitute the contract. It sets out an ordinance duly passed May 28th, and approved June 1st, 1867, the third section of which enacts, "That the common council of Jersey City may, when deemed advisable, and for such period as they may see fit, contract in the manner directed by the city charter, with some proper person or persons, whose duty it shall be to perform the duty of transportation and discharge of the contents of all sinks, privies, and cesspools mentioned in the second section of this ordinance."

By a resolution passed on the 21st of May, 1867, the common council directed the committee on streets and public health to advertise for proposals for a contract for five years for the removal of night soil. The resolution was returned not signed by the mayor, with his objections, and on the 4th of June was duly passed over his veto. The committee advertised for proposals, and the complainant sent in proposals to perform the work for $530 per month. His proposals were the lowest offered. The committee reported the proposals to the common council at a regular meeting held July 16th, 1867, whereupon the following resolution in relation thereto was offered by one of the committee, and adopted by the common council : "Resolved, That the twelve sealed proposals reported at this meeting by the committee on streets and public health, opened and read, to remove night soil from the city limits, be referred to the committee on streets and public health, with authority to enter into a contract with the lowest of said bidders; provided, the said

2 M *

committee deem it to the interest of the city so to do ; and that on the requisition of the said committee, the mayor and city clerk are hereby authorized to execute, under the corporate seal of the city, and on its behalf, such contract as shall have been prepared by the corporation attorney, and duly executed by the party or parties to whom the same shall have been awarded, and after the said party or parties shall have given security satisfactory to the committee on streets and public health, for the faithful fulfillment of the said contract."

This resolution does not appear to have been presented to the mayor for signature, or to have been signed or approved by him.

The committee deemed it for the interest of the city to enter into a contract with the complainant, according to his proposals, and caused a contract to be prepared by the city attorney. This contract they gave to the complainant, to be executed by him ; he returned it to them, signed by himself, and accompanied by the undertaking of a person, approved by the committee as sufficient, to enter into a bond, in the amount required by them as security, for the performance of the contract.

The committee had requested Dey to furnish the barges required by his contract, immediately. He demurred, because the contract was not yet executed and exchanged. They requested him to go on, and assured him that the contract would be executed, and that they would give the necessary requisition on the mayor and the city clerk. Dey thereupon provided the barges, and performed the duties required by the proposed contract, from August 1st, 1867.

The common council, by a resolution passed August 20th, 1867, presented to the mayor, August 23d, and which took effect on the 2d of September, by its not being returned by the mayor, rescinded the resolution of July 16th, and rejected the proposals of Dey. The return of the contract executed by Dey, with the proffer of security, was on the 25th of August, after this resolution had passed the common council,

but before it went into effect, if it required the signature of the mayor.

The question raised by the demurrer is, whether the complainant is entitled to relief upon the facts set forth in the bill. The complainant. insists that the acceptance of his proposals by the committee, together with the acts of part performance at their request, entitles him to a specific performance of the contract by having it executed by the city.

The whole equity of the complainant depends upon the acts of the committee in accepting his proposals; and accepting part performance, and upon the question whether the committee had power to enter into a contract for the city, in that or any other way. The defendants contend that the resolution of July 16th, upon which the power of the committee hangs, was never legally passed, and never took effect; that to give it effect, it must have been presented to the mayor for his signature, and have been signed, or retained, or passed over his veto. The complainant insists that the ordinance conferred the power to contract on the common council, and that, by virtue of it, they could by themselves, or through their committee, make the contract, without the concurrence of the mayor.

By the charter of the city, passed in 1851, the legislative power was vested in the mayor and common council. By the 42d section of the charter, the common council were authorized to pass ordinances for certain purposes specified. The 36th section required all ordinances to be presented to the mayor for his approval. And an amendment, passed in 1852, required "every resolution of the common council, affecting the interests of the city," to be presented in like manner. This amendment was made by inserting these words in the section; and all the requirements of that section, before the first proviso, must be considered, notwithstanding some fault caused thereby to the grammatical structure of the sentence, as applying to such resolutions as well as to ordinances. The resolution of July 16th, was one which affected the interests of the city, and was clearly of no avail,

as a resolution, unless presented to the mayor for approval; and I cannot see that the power conferred on the common council by the ordinance, changes this. That power was conferred on the common council as a body, or board, having a statutory existence as such, and not on the individual members. Had all, or the majority of the members, gone out of office before the contract was entered into, the board, as thus newly constituted, would have had the power. The 30th and 31st sections of the charter, provided that the board of aldermen shall consist of the aldermen elected from each ward, and shall constitute and be called the *common council*. It also enacts that a majority of the common council shall constitute a quorum; that it shall annually elect a president, keep a journal of its proceedings, and shall have stated meetings at least once in each month. These provisions, as well as the object and nature of its creation, show that the common council is a body or board, and must act, and can only act, as such; that it must act when assembled at stated or special meetings, and organized with a president to conduct, and a clerk to record, its proceedings. Such body can hardly act in any other manner than by ordinance or resolution. Every act must be by a vote of the members present; and, whether it is called an order, direction, or determination, it is still a resolution, because it must be resolved on, upon a motion made by some member.

Whether it could or not act in any case except by resolution, it did in this case act, or attempt to act, literally and technically, *by resolution*. This act, therefore, being by resolution, is controlled by express provision of the charter, and cannot take effect until presented to the mayor. This resolution is far more important to the general interests of the city than the previous resolution, which only directed advertising for proposals, and bound the city to nothing. Yet that was presented to the mayor, and, when returned, passed formally over his veto. The rescinding resolution was also sent to him, and went into effect by the lapse of time. This shows the practical construction of this part of

the charter by the common council themselves. And I have no doubt that this construction of the ordinance is in accordance with the intention of the common council, as well as with the rules of law determining the effect to be given to these words.

As the statements of the bill show no legal contract by which the defendants are bound, whether by parol or in writing, the other questions raised on the argument of the cause become of no consequence, and need not be considered.

The demand for remuneration for services rendered is, of itself, not a proper subject of equity jurisdiction, and must be determined at law.

The demurrer must be sustained, and the bill dismissed.