STATE, EX REL. MARTIN V. McDERMOTT, v. JAMES KENNY ET AL

STATE, EX REL. MARTIN V. McDERMOTT, v. CHARLES H. H. MILLER

1. A *mandamus* will be allowed to induct a city clerk into office, to which he has been appointed by common council, where the office is not filled and there is no adverse claimant in possession.

2. The charter of Hoboken enacts that the councilmen, or a majority of them in council assembled, by not less than four concurring votes, shall and may, from time to time, elect certain officers. *Held*, that the addition of a fourth ward, making the whole number of councilmen eight instead of six, did not make five votes, or a majority of the board, necessary to elect; but that four votes, being a majority of a quorum, might elect.

3. Section 34 of the charter of Hoboken, (*Pamph. L.* 1855, *p.* 460,) directing that every ordinance and resolution affecting the interest of the city shall, before it takes effect, be presented, duly certified, to the mayor for his approval, does not apply to the appointment of officers by the common council.

The respondent, Charles H. Miller, was chosen assistant clerk of the council of Hoboken May 2d, 1882, and has continued in that position until now. Leon H. Kendrick was appointed city clerk by the council May 1st, 1882, and held that position until August 4th, 1882, when he resigned. Since that time Miller has acted as city clerk, keeping the minutes of council, &c., and having the custody of all the books, papers and documents of the city of Hoboken of which the city clerk is custodian. The city clerk is a charter officer, (*Pamph. L.*

1855, *p.* 449, § 3,) and by section 20 of the charter shall have charge of all the records, books, papers and documents of the city, except when the council shall by ordinance otherwise direct. The assistant city clerk is appointed by ordinance, passed June 22d, 1870, to do and perform such work in said office as shall be assigned to him by the city clerk or by the council. By the original charter (section 3) the city clerk was elected by the voters of the city, but by the general law of March 16th, 1882, (*Pamph. L., p.* 101,) concerning the appointment of city clerks in the cities of this state, the common council of cities of the second class, in which the city of Hoboken is included, shall appoint a city clerk in the manner provided by law for the appointment of the city officers.

The city of Hoboken was first divided into three districts or wards, (section 2,) entitled to two councilmen for each ward, (section 4,) and afterwards, by the law of March 16th, 1869, (*Pamph. L., p.* 411,) a fourth ward was made, with defined boundaries, entitled to the same representation in the council and to all the other rights and privileges of the other wards. By section 40, defining the powers of the council under the twelfth subdivision, the manner is provided for the appointment of city officers, and by it the councilmen, or a majority of them in council assembled, by not less than·four concurring votes, shall and may, from time to time, elect and appoint certain officers. Vacancies caused by refusal to serve, death, removal, resignation, or from other causes whatever, of city officers, may be filled by the city council for the unexpired term. Section 18.

On November 14th, 1882, after many attempts to appoint a clerk at previous meetings, the common council, on motion, proceeded to ballot for city clerk. Of the eight members representing the four wards, five were present when the fourth ballot was taken, and four voted for the relator. Two members of council left after the balloting began, and one was absent during the meeting. A resolution that Martin V. McDermott be and he is hereby appointed and confirmed as city clerk of the city of Hoboken, to fill the vacancy in said office

caused by the resignation of Leon H. Kendrick, the late incumbent, was then introduced and passed by the same four votes, one being given in opposition.

Having given bond pursuant to the charter, and taken an oath of office, the relator demanded of the assistant clerk, and of the council, the charge of the records and papers, and to sit and keep the minutes of the meeting, which demand was refused. Application is now made for a *mandamus* to the assistant clerk and to the members of council, to compel his admission to the duties of the office required of him in the charter.

Argued at February Term, 1883, before Justices DEPUE, SCUDDER and REED.

For the relator, *J. H. Lippincott.*

For the respondents, *S. A. Besson.*

The opinion of the court was delivered by

SCUDDER, J.    If the relator has been duly appointed to the office of city clerk by the required vote of the common council, he will be entitled to a writ of *mandamus* to compel the members of council to admit him to the possession of his place and to the performance of his duties.  *Quo warranto* is not the proper remedy where the office is not filled and where there is no adverse claimant or officer in possession.

Charles H. Miller appears by the affidavits taken on the rule to show cause to be assistant clerk under the ordinance of June 22d, 1870, and has never been appointed city clerk under the charter and the general law of 1882.  As the purpose of this application is not to try the title of Miller to the office of assistant clerk, which it is admitted he holds, but to induct the relator into the office of city clerk, to which he claims he has been appointed by the common council, the appropriate remedy is by *mandamus*.  *Rex* v. *Slatford,* 5 *Mod.* 316; *Reg.* v. *Derby,* 7 *A. & E.* 419; *Reg.* v. *Leeds,*

McDermott v. Miller.

11 *A. & E.* 512; *Frost* v. *Chester*, 5 *E. & B.* 531; *Angell & Ames on Corp.*, § 702; *High on Ex. Rem.*, § 402; 2 *Dill. on Mun. Corp.*, § 842.

In *State* v. *Rahway*, 4 *Vroom* 111, the writ of *mandamus* was allowed to compel the common council to proceed and determine as to the election of a councilman in the mode pointed out by the charter; and it was said that the relator was not entitled to have a *mandamus* compelling the defendants to admit him to office. But here it is alleged that the common council have proceeded and elected the relator to the office of city clerk in the way prescribed by the charter and the general law applicable to the case, but refuse to admit him to his office. As *quo warranto* will not lie in such a case, the relator may be without remedy, unless a writ of *mandamus* be allowed. The writ will not be granted, however, unless the relator shows at least a *prima facie* title to the office claimed by him. His application is based on the vote of the members of council at their meeting on November 14th, 1882, when five councilmen, being a majority of the whole number of the board, composed of eight members, voted for city clerk, and he was declared elected on receiving four votes of the five that were cast. In other words, he claims that a majority of a quorum to transact business was sufficient to make the appointment of a city clerk. It is the general rule that a majority of a select body of men possessing the power to elect being present, a majority of the quorum may elect. *State* v. *Paterson*, 6 *Vroom* 190; 1 *Dill. on Mun. Corp.*, § 278; 2 *Kent Com.* 293. But the rule will not be enforced where there are specific directions in the charter prescribing the mode of election and the number of electors required to appoint to an office. Where the statute directs the mode of election, this must be exactly followed to effect a valid appointment.

Section 40, subdivision 12, of the charter of Hoboken, which furnishes the rule for the election of a city clerk, says that the councilmen, or a majority of them in council assembled, by not less than four concurring votes, shall and may, from time to time, elect, &c. Whether, therefore, all

the councilmen, or a majority of them assembled, a majority of the full board, was required to elect when the whole number of councilmen was six, representing the three wards of the city. When the fourth ward was added in 1869, and the number of councilmen increased to eight, the requirement that there should be at least four concurring votes to elect was not changed, either in express words or by implication. The limitation of election to not less than four votes may still have effect in controlling the vote; and the addition of a new ward, with two members of council, will change the elective vote from a majority of the entire former board to a majority of a quorum in the present board of eight members. There is meaning and congruity in the present form of the statute, and it is the duty of the court to interpret it and give it effect. The legislature had the power to change the mode of electing officers, and if they have done so, we cannot say it was not their purpose to do it, and add other terms to the law.

The presence of five members at the time of the election for city clerk, constituted a majority or quorum of the councilmen in council assembled, and by not less than four concurring votes the prosecutor was elected. He was chosen by a majority of a quorum in exact accordance with the provisions of the charter, and was entitled to his office. If the whole number of councilmen had been present the limitation would be without effect, for then a majority of all would be required to elect.

It was thought of some importance on the argument, for the future government of the city, that the court should also express an opinion on the further question whether it was necessary that the mayor should approve the resolution appointing the relator to office. He refused to do so, for the reason that McDermott had not obtained a majority of all the votes of the councilmen. By section 34 of the charter, (*Pamph. L.* 1855, *p.* 460,) every ordinance of the council, and every resolution of the council affecting the interest of the city shall, before it takes effect, be presented, duly certified, to the mayor for his approval. The terms " ordinance " and " resolution,"

as was said in *Haight* v. *Love*, 10 *Vroom* 14, are not appropriate to the appointment of a city officer. An election is usually ordered by motion, and is made by ballot or *viva voce*, not by ordinance or resolution. These are used in legislative proceedings, and where they affect the interest of the city, it is important that the executive officer shall have the usual power of veto; but very serious embarrassment might follow if the mayor were given the authority to defeat the will of a majority of council in the appointment of city officers, where the law has not made him a member of that body. Legislative bodies are sometimes called upon to confirm the nominations made by an executive officer, but it is not usual to seek the approval of the executive for officers appointed by a legislative body. Such a departure from the ordinary course of proceeding should be manifested by very clear language. In the appointment of officers under this charter, the approval of the mayor is not necessary, nor has he the power to veto such appointment.

As the office is annual, and there are no disputed facts in the case, a peremptory *mandamus* will be allowed, with costs.