Cadmus v. Farr.

STATE, EX REL. JASPER A. CADMUS, v. WILLIAM C. FARR.

1. When corporate acts may be done by a definite number of individuals, and the charter of incorporation does not prescribe the number of votes necessary to the doing of such acts, a quorum, when duly met, may legally do such acts by a majority thereof.
2. This rule applies to a board of councilmen of a municipality in the election of a presiding officer, under authority to elect annually one of their number to be president of the board, when the charter does not prescribe the number of votes necessary to such election.

On demurrer to information in *quo warranto.*

Argued at June Term, 1885, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, MAGIE and PARKER.

For the relator, *E. A. S. Man.*

The question brought before the court by the writ in this case is simply whether the board of councilmen of the city of Bayonne could organize itself, under the provisions of its charter and the laws of the state, by electing a president by a vote of a majority of the members present at a meeting, said majority not being a majority of the whole number elected and qualified.

The charter in force is "An act revising the act to incorporate the city of Bayonne, in the county of Hudson and State of New Jersey, approved March 10th, 1869," approved March 22d, 1872. Section 20 provides partially for the organization. Section 32 provides that a majority "shall constitute a quorum for the transaction of business." Section 35 provides that council can appoint certain officers, including pound-keepers, "by a majority of the whole number." Section 29 provides that "no ordinance or by-laws shall be enacted or passed * * * unless the same * * * shall have been agreed to by a majority of the board." The above are all the sections of the charter bearing on the question at issue.

I. Information in nature of a *quo warranto* proper remedy to test right of a person to preside over a meeting of a municipal body. *Dill. on Mun. Corp.*, §§ 210, 714, *and cases in notes.* The right to preside is a franchise. *Dill. on Mun. Corp., supra. Quo warranto* proper remedy where office public. *Bowne* v. *Meehan*, 16 *Vroom* 189. There are a large number of New Jersey cases to the same effect. See, also, *Quo warranto* act.

II. The business proper of a city council is legislative. In this case section 28 of charter so states. In addition, the legislature gives them power to do certain executive or administrative acts, such as the election of their president. This executive act is in no sense a legislative one. *Ackley's case,* 4 *Abb. Pr.* 35 ; *Abb. Dig., tit.* " *Corporations,*" 503.

The council cannot proceed to " transact business " until organized. Till then it has no legislative power. *Cushing's Law of Legislative Assemblies,* § 277. The necessary prior executive act of electing a president is no part of the " business " proper of council, and is not governed by the provisions of section 32 of charter, providing for quorum " for the transaction of business ; " that applies after organization only.

Section 28 of charter says " legislative power " of city " shall be vested in the board of councilmen ; they shall annually elect one of their number to be president of said board," &c. To whom can the " they " and " their " refer but to the councilmen individually ? They are as yet unorganized and incapable of " transacting legislative business."

The quorum-for-transaction-of-business section of charter cannot apply. For the transaction of " legislative business " after proper organization there can be no doubt, at this day, that section 32 applies, and a majority of a legal quorum is sufficient ; but to perform the executive act necessary to organize themselves into a board, viz., election of president, they act as individuals, and the vote of a majority of the whole is necessary. A careful examination of the charter will show that this is the intention of the legislature.

As we have seen, almost every act the council is authorized to do requires a majority vote of the whole number. Not even a pound-keeper can be appointed without it. Much less can a president with his great powers. Every act authorized by section 28 requires a majority of the whole council.

III. There is a great dearth of decisions in regard to organization proceedings in the books, and none directly in point; but it appears to have been a rule of the common law that a majority of the whole is necessary where not modified by statute. In *State of Delaware* v. *Wilmington*, 3 *Harring.* 294, the court says : " Common law rule is perfectly well settled that the majority alone can bind the community." 1 *Kyd on Corp.* 308 ; *Ang. & A. on Corp.* 280 ; 2 *Kent* 293 ; 7 *Serg. & R.* 517. There are numerous English cases to the same effect ; but absolutely no case can be found authorizing or approving of the election of a president of a legislative body by a lesser vote than the majority of the whole body.

IV. We find, however, that this very absence of decided cases is accounted for, and that the law on this question is authoritatively and very definitely laid down by an authority which every legislative body in the country recognizes and makes a guide for its own proceedings. In *Cushing's Law of Legislative Assemblies, p.* 115, § 297, we find : " It is essential to the discharge of the duties of a presiding officer that he should possess the confidence of the body over which he presides, in the highest practicable degree. It is apparently for the purpose of securing this necessary confidence that the presiding officer is required to be chosen by the assembly itself, and by an absolute majority of votes."

Section 298 : " In regard to the number of votes necessary to elect, it seems to be a rule established, at least by practice and usage, that nothing short of an absolute majority will be sufficient, even in those states where the election of other officers takes place by a plurality. * * * If a plurality' alone was sufficient to elect, it might and probably would happen frequently that an election would be made by a num-

ber less than a majority, in which case the person elected might be instantly removed by those who were opposed to his election, who would of course constitute a majority of the whole." See note (1) to above section.

We find in *Dill. on Mun. Corp.* (2d ed.,) § 288, that "after a meeting of the council is duly convened, the mode of proceeding is regulated by the charter or constituent act, by ordinances passed for that purpose, and by the general rules, so far as in their nature applicable, which govern other deliberative and legislative bodies." Judge Dillon here clearly recognizes the full application of parliamentary common law to municipal bodies.

V. An examination of the constitution and statutes of this state reveals the fact that no other provision is made, in regard to the state senate and assembly presiding officers, than that contained in article IV., § 4, ¶ 3, of the constitution, which simply gives to those bodies the power to elect their own officers. How they are elected is left to parliamentary common law, which provides, as above stated, for "an absolute majority" of the whole body. And these bodies expressly endorse Cushing's Work by adopting its provisions for all cases not covered by their own rules of order. See Manual. Their rules of order make no provision for the election of a president or speaker, but a majority of the whole body has always been necessary to a choice. So in the United State house of representatives and other legislative bodies.

For the defendant, *Charles L. Corbin.*

This case brings up the question of the validity of the election of defendant to the office of president of the city council of Bayonne. He was elected by a majority of a quorum of the council. It is insisted by the relator that a majority of the whole number of the councilmen is essential to elect a president.

The statutory provisions touching the question are found in the Bayonne charter. *Pamph. L.* 1872, *p.* 686, §§ 23, 28,

32, 33, 35. Section 35 contains an express provision that certain city officers shall be elected by a majority of the whole number of the council. No such provision is found as to election of president, either in section 28 or elsewhere in the charter.

The general principle is well settled that where a body having the power of election or appointment consists of a definite number, a majority makes a quorum, and a majority of the quorum may elect or appoint. This doctrine is set forth in a *dictum* of Lord Mansfield, in *Rex* v. *Vail, Cowp.* 250, and established in *Rex* v. *Bellringer,* 4 *T. R.* 810, and *Rex* v. *Miller,* 6 *T. R.* 268. See, also, *Ex parte Willcocks,* 7 *Cow.* 401, 409 ; *Lockwood* v. *Mech. Nat. Bank,* 9 *R. I.* 308, 337 ; *Ang. & A. on Corp.,* § 127 ; *Dill. on Mun. Corp.,* §§ 278–283 ; *Buell* v. *Buckingham,* 16 *Iowa* 284, 291.

In *Rex* v. *Monday, Cowp.* 530, 538, the election was of aldermen by a definite municipal body having six members. Five met to elect aldermen, and the choice made by three of them was sustained. Lord Mansfield said : " When the assembly are duly met, I take it to be clear law that the corporate act may be done by the majority of those who have once regularly constituted the meeting." This doctrine has been recently applied by this court to the case of an election of an officer by a municipal board. *McDermott* v. *Miller,* 16 *Vroom* 251.

The charter of Bayonne expressly provides that a majority of the board shall constitute a quorum to transact business. *Pamph. L.* 1872, *p.* 698, § 32.

The only respect in which the case now before the court differs from those above cited is that the president of the council is an officer chosen in the organization of the board to preside over its deliberations, and it is urged that such an officer must have a majority of the whole body. In reply, we say :

I. No authority can be found making the choice of a presiding officer an exception to the general rule. Such an officer must be the choice of a majority of those voting, as dis-

Cadmus v. Farr.

tinguished from a mere plurality. In other respects he stands on the same footing as other elective officers.

The practice of the house of representatives is instructive. The constitution provides, (article I., § 2,) that the house "shall choose their speaker and other officers." This language is similar to that of the Bayonne charter. A majority of all the votes cast for speaker is held sufficient. In the long contests of December, 1849, and December, 1859, to February, 1860, over the speakership, every announcement in the minutes names a bare majority of the votes cast as the number needed for a choice, and in February, 1860, when Mr. Pennington was elected, he received one hundred and seventeen votes out of two hundred and thirty-three cast, the whole house consisting of two hundred and thirty-seven members. *Cong. Globe, No. 50, p. 650; Id., p. 1.* In the whole debate no question was raised that a bare majority of the vote cast was sufficient for a choice.

II. The reason of the rule requiring a majority vote of those present to elect a presiding officer is stated in Cushing's Manual to be that the presiding officer holds at the pleasure of the body, and if elected by a mere plurality a hostile majority may remove him. *Cush. Leg. Law,* § 298.

This reason has no application to the office of president of the council of Bayonne. He is not a mere presiding officer of the council, but an officer of the corporation. He succeeds the mayor in case of the latter's disability or death. *Pamph. L.* 1872, *p.* 691. He is a commissioner of the sinking fund. He holds for an annual term, and can be removed only for cause, by a two-thirds vote. *Id., p.* 696, § 23; *p.* 697, § 28; *p.* 699, § 33. It should be observed that while, by the charter, a majority of the whole number of the council must appoint certain officers, (*Id., p.* 699, § 35,) no such majority is required for president. *Id., p.* 697, § 28.

III. The fact that the choice of president is necessary to an organization does not alter the rule. The authorized councilmen were ascertained by the election returns, (*Pamph. L.*

1872, *p.* 690, § 8,) and they were called together by the mayor, pursuant to the charter. *Id., p.* 698, § 32. The majority having met at the proper time and place, constitute the board referred to in section 28 of the charter, who are to " elect one of their number to be president," and " the regularly constituted meeting " mentioned by Lord Mansfield, as above quoted.

A recent case reviewing the authorities is that of *State* v. *Green*, 37 *Ohio St.* 227. The Revised Statutes of Ohio require the election of a president and clerk before any other business could be transacted. There were eighteen members of the Zanesville council, all present. Nine members, being one less than a quorum and less than a majority of those present, voted for the relator; the other nine did not vote, and protested against the decision. As there was a quorum present, and as the majority of those who voted at all voted for the relator, he was held elected.

Our case is stronger, because seven of the council were not only present, but voted, and the election was therefore an act in which seven members participated. See *Booker* v. *Young*, 12 *Gratt.* 303, 310; *Oldknow* v. *Wainwright*, 2 *Burr.* 1017.

In this last case the aldermen and council were summoned to elect a town clerk. There were twenty-five electors. Of these, twenty-one assembled. Nine voted for one candidate; the other eleven protested against any election at all. Lord Mansfield saw no doubt in the case, and sustained the election.

The opinion of the court was delivered by

MAGIE, J. By section 32 of the act incorporating the city of Bayonne, approved March 22d, 1872, (*Pamph. L., p.* 686,) it is provided that a majority of the board of councilmen shall constitute a quorum for the transaction of business, and that the mayor may call a special meeting of that board upon a prescribed notice. By section 28 of the same act it is made the duty of that board to annually elect one of their number to be president of the board.

The information filed in this case shows that on the last

Monday in April, 1885, said board consisted of ten councilmen; that at a meeting held on that day and at another meeting held on May 5th, 1885, all the councilmen being present, the board attempted to elect a president, pursuant to the requirement of section 28; that many ballots were taken, all the councilmen voting, but no person received at any ballot more than five votes; that the board was convened on May 12th, 1885, by the call of the mayor, pursuant to section 32, and seven councilmen were in attendance, and resolved to proceed to business; that William C. Farr, the defendant, was nominated for president, and at one or more of the ballots then taken received five out of seven votes cast; that defendant claimed thereby to be elected, and then and at a subsequent meeting took the position and performed the duties of president.

The information claims that six votes were requisite to elect a president, and that defendant, never having received but five, was not duly elected, but intrudes into the office. It calls on him to answer by what warrant he holds the office.

Defendant demurred to the information, and now insists that the facts shown therein establish in him a perfect title to said office, and therefore he ought not to be required to further show his title.

The information shows a legal meeting of the board, duly called and attended by a majority of the councilmen, who, by the express terms of the charter, constituted a quorum for the transaction of business. The annual election of one of their number to be president was business expressly required to be transacted. The quorum present was therefore capable of transacting that business. The only question presented is whether the choice of a president could be made by a majority of those present or required a majority of the whole board.

The information asserts that by the provisions of the act governing Bayonne, and by the laws, customs and usages of the state, a majority of the whole number of councilmen was requisite to an election of president.

The twenty-eighth section, which prescribes the duty of

electing that officer, is silent as to the number of votes requisite to an election. Nor is there elsewhere in the act any express provision on the subject. Yet the legislature in this act clearly evinced an intention to require a vote of a definite number to validate certain acts. Thus, by section 35, which prescribes the appointment of other officers by the board, it is declared that the appointment must be made by a majority of the whole number of the members of the board, and if the appointment is not approved by the mayor, it can only be made by a vote of two-thirds of all the members elected.

By sections 28 and 33 the expulsion or removal of members can only be effected by a vote of two-thirds of all the members elected.

The section (28) which gives power to elect a president, also gives other powers, such as to appoint the time and place of meeting, to make rules and to pass ordinances, &c. By section 29 it is provided that ordinances and by-laws can only be passed when agreed to by a majority of the board, and if vetoed, only by two-thirds of all the members elected.

By these provisions it appears that the legislative intent was to require a specified majority in certain cases. In other cases, in respect to which no rule was prescribed, it is clear the intent was to leave them to the general rule governing the action of corporate bodies.

The general rule, in the absence of specific provision, is well settled, and is that when the body empowered to act consists of a definite number of individuals, a majority of that number will constitute a quorum for the transaction of business, and when duly met a majority of the quorum may act. The rule was thus stated in this court in *McDermott* v. *Miller*, 16 *Vroom* 251, and in *State* v. *Paterson*, 6 *Vroom* 190, and rests on a long line of authority from which I find no dissent. 2 *Kent's Com.* *293; *Ang. & A. on Corp.*, §§ 501–504; *Dill. on Mun. Corp.*, § 216; 5 *Dane's Abr.* 150; *Rex* v. *Miller*, 6 *T. R.* 268; *Rex* v. *Bellringer*, 4 *T. R.* 810; *Rex* v. *Monday*, *Cowp.* 530; *Rex* v. *Varlo*, *Cowp.* 250; *Oldknow* v. *Wainright*, 1 *W. Bl.* 229; *Gosling* v. *Veley*, 7 *Ad. & E.* (*N. S.*)

Cadmus v. Farr.

406 ; *Ex parte Willcocks*, 7 *Cow.* 401 ; *Lockwood* v. *Mech. Nat. Bank*, 9 *R. I.* 308 ; *Buell* v. *Buckingham*, 16 *Iowa* 284 ; *Columbia, &c., Co.* v. *Meier*, 39 *Mo.* 53 ; *Sargent* v. *Webster*, 13 *Metc.* 497 ; *First Parish* v. *Stearns*, 21 *Pick.* 148 ; *State* v. *Green*, 37 *Ohio St.* 227.

Some of these cases construe the rule to validate the act of a quorum present, when passed by a mere majority of those voting, though such majority does not comprise the major part of those present, or even of a quorum. But the extent of the rule is not now in question. For, applying it in the most limited form to the facts of this case, the defendant's election is demons'rated. There was a legal board of councilmen, capable of transacting this business, and no other rule being prescribed by the charter, the vote of a majority of those present given for defendant elected him.

It was urged on the argument that the office claimed by defendant is excepted from the general rule. In support of this position we were referred to *Cushing's Law of Legislative Assemblies*, §§ 297, 298. But the authority cited does not go to the length here contended for. The author states that the presiding officer of a deliberative body should possess the confidence of the body in the highest practicable degree, and so is required to be chosen by an absolute majority of votes. But it is plain from the context that Mr. Cushing is speaking merely of a usage of electing such officers by a majority rather than a plurality of votes. If this usage be anything more than the usual requirements of the law, and if it be an imperative rule, it has no application to the case in hand, for defendant was elected, not by a plurality, but by a majority of the votes cast.

The demurrer must therefore be sustained.