WILLIAM A. KRULISH, PLAINTIFF-RESPONDENT, v. MAURICE H. EVANS, MELVIN E. LEVERS AND HENRY G. NULTON, DEFENDANTS-APPELLANTS.

Argued September 27, 1954—Decided September 27, 1954.

*Mr. Stanley W. Greenfield* argued the cause for the appellants.

*Mr. Harry Dvorken* argued the cause for the respondent (*Mr. Albert L. Kessler,* attorney and of counsel).

The opinion of the court was delivered by

VANDERBILT, C. J. The plaintiff, as a taxpayer and resident of the Fourth Ward of the Borough of Roselle, brought a proceeding in lieu of prerogative writ (1) to oust the defendant Evans from the office of councilman from the Fourth Ward and to declare his office vacant; (2) to compel the defendant Levers as borough clerk to give appropriate notice of the vacancy in the office; and (3) for a declaratory judgment to determine the rights and duties of each of the defendants (the third defendant being the county clerk).

Each side moved for summary judgment on an agreed statement of facts.

The facts are that on November 3, 1953 the defendant was elected to the office of councilman from the Fourth Ward, of which he was then a resident. He assumed office on January 1, 1954 but some time thereafter moved his residence to the Fifth Ward of Roselle where he continues to reside at the present time. On the stipulated facts the trial court gave summary judgment for the plaintiff, ousting the defendant from office and declaring it vacant. The defendant Evans appealed to the Appellate Division of the Superior Court and at the request of both parties in view of the shortness of time for the nomination of candidates to be voted on at the oncoming general election we certified the appeal on our own motion.

 The sole question is whether a councilman who has been duly elected from the ward in which he resides and who has duly qualified and is serving may be ousted from office for changing his residence to another ward in the same municipality. The trial court applied, and we think correctly, the rationale of *Horwitz v. Reichenstein*, 15 *N. J.* 6 (1954), where we held under the statutes there applicable that a candidate for election as a ward councilman must reside in the ward in order to be eligible for election. In the *Horwitz* case the Faulkner Act, *N. J. S. A.* 40:69A–59, provided for councilmen at large and ward councilmen *"from each ward."* In the instant case *R. S.* 40:87–2, which governs the borough, authorizes it to "divide into wards and elect councilmen *from the wards* so established" and *R. S.* 40:87–6 goes on to provide that if there are five wards, as here, "each shall *have* one councilman and there *shall be* one councilman elected at large." The parallel between the two statutes in requiring councilmen to represent wards is clear, but in the instant case the legislative intent is made even clearer. By *R. S.* 40:87–7 it is provided:

"The terms of office of the councilmen in office at the time of the establishment of wards shall not be affected. Immediately after wards

are established the councilmen then in office shall, by lot if they cannot unanimously agree, be assigned to represent the respective wards, or as councilmen at large, and as their respective terms shall expire their respective successors shall be elected by the legal voters of the ward to which they shall have been assigned or by the voters at large if they have been designated as councilmen at large."

The statutory language indicates a plain legislative intent that the ward councilmen shall represent their respective wards and the inference is inescapable that this representation shall continue throughout their term of office. For the same reasons that residence in the ward was required in the *Horwitz* case to support a petition for nomination, residence in his ward throughout his term of office is required to enable a ward councilman to comply with the legislative intent that he represent his ward. This construction, as we have seen in the *Horwitz* case, gives effect to our well recognized political philosophy of local representation of the citizens of the vicinage by a fellow citizen, 15 *N. J.* 6, at 11, and it will require clear evidence of a contrary legislative intent to override it. We find no such legislative intent here.

█ The defendant relies on *R. S.* 19:23–15, which provides:

"Such acceptance shall certify that the candidate is a resident of and a legal voter in the jurisdiction of the office for which the nomination is to be made. * * *"

but there is nothing in this statute, which governs the acceptance by a candidate of a nominating petition for a *primary* election, that relates to his residence during his term of office. It refers to matters antedating his election.

█ The defendant also cites in his support *R. S.* 40:46–14:

"Whenever an officer of a municipality shall cease to be a *bona fide* resident therein, or whenever the resignation of any such officer shall have been accepted by the proper authority, a vacancy in his office shall immediately exist. * * *"

But this statute likewise does not aid him, first, because, as we have seen from the general statutory scheme of bor-

ough government, a ward councilman, although in one sense a municipal officer, is primarily a ward officer from the standpoint of the election laws; secondly, because a provision of law as to the effect of the removal by a municipal officer of his *bona fide* residence to another municipality is not controlling on the rule of law applicable to the removal of a ward councilman from his ward; and thirdly, because such light as it does shed favors by analogy the construction of the applicable borough statutes here adopted.

The judgment below is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices OLIPHANT, WACHENFELD, BURLING, JACOBS and BRENNAN—6.

*For reversal*—Justice HEHER—1.