67 N.J. Super. 95 (1961)
169 A.2d 852
MAURICE G. PREZLAK AND MARIE PREZLAK, HIS WIFE, PLAINTIFFS,
v.
CARL A. PADRONE AND DONALD F. MacART, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided March 29, 1961.
*97 Mr. Julius Fielo, attorney for plaintiffs.
Mr. Russel E. Greco, attorney for defendants.
MATTHEWS, J.C.C. (specially assigned).
This is a proceeding in lieu of prerogative writs, in which plaintiffs, as citizens and taxpayers of the City of East Orange, challenge the action taken by a bare majority of the remaining members of the city council of that city in seating the defendant Padrone as a member of such council.
At the outset, it is observed that plaintiffs are proper parties to the action herein instituted in that they do not seek to attack the existence of the office in question, but rather attack only the right of the defendant Padrone to hold such office. Goff v. Hunt, 6 N.J. 600 (1951).
The facts leading to the controversy presently before the court are not in dispute, and have been stipulated by counsel to embrace essentially the following: On January 2, 1961, the first of January falling on a Sunday, the city council of the City of East Orange, as required by law, convened and its duly elected members organized and thereupon transacted business. On January 3, 1961, Edward E. Ruhnke, Sr., who had been elected to the office of councilman from the first ward of the City of East Orange, at the general election held November 8, 1960, resigned his office as councilman. Such resignation was accepted by the city council. Mr. Ruhnke's term as councilman commenced January 1, 1961, to terminate December 31, 1962.
The City of East Orange is a municipal corporation and functions under the provisions of R.S. 40:103-5 (Acts Saved From Repeal), this charter being a compilation of a series of general laws: L. 1908, c. 250; L. 1910, c. 249; *98 L. 1911, c. 87; L. 1912, c. 165, 192, 249; L. 1914, c. 135; L. 915, c. 123, 153, 205; and L. 1960, c. 126.
For the purposes of local government, the city is divided into five wards, from each of which two councilmen are elected, forming a city council composed of a total number of ten councilmen.
Following the resignation of Mr. Ruhnke, the city council met in a properly convened meeting on January 9, 1961; there were present at this meeting the nine remaining members of the city council. During the course of the meeting one Norman E. Scull was nominated to fill the vacancy caused by Mr. Ruhnke's resignation. Mr. Scull's appointment was defeated by a vote of five councilmen to four. Following the rejection of Mr. Scull, the name of the defendant Padrone was placed in nomination, and upon consideration thereof a vote of five councilmen for the seating of Mr. Padrone and four against was recorded. The chairman of the council, defendant MacArt, thereupon declared the defendant Padrone to be appointed to the city council to fill the vacancy caused by the resignation of Mr. Ruhnke. An appeal from the chairman's ruling was lost by a four to four vote, in the taking of which the defendant MacArt abstained. Upon the motion appealing the ruling having been defeated, defendant Padrone was permitted to take the oath of office and assume a seat on the city council as a representative of the first ward.
The plaintiffs do not claim that defendant Padrone is not a citizen and taxpayer of the City of East Orange, or that he is not a resident of the first ward thereof. Horwitz v. Reichenstein, 15 N.J. 6 (1954); Krulish v. Evans, 16 N.J. 200 (1954).
Plaintiffs' attack on the right of defendant Padrone to hold the office of city councilman from the first ward is based upon their construction of two sections of the city charter. Insofar as is pertinent here, the essential provisions of these sections, R.S. 40:103-5(12) and R.S. 40:103-5(35), are as follows:

*99 40:103-5(12)
"12. In case a vacancy shall occur, for any reason, in any elective office the city council shall have power to fill such vacancy by the appointment of a suitable person to hold such office for the unexpired term.
In case a vacancy shall occur, for any reason, in any appointive office the same shall be filled in the same manner as the original appointment to such office was made, but only for the unexpired term. * * *"

40:103-5(35)
"35. A majority of the whole number, as herein provided, of the members of the city council shall constitute a quorum for the transaction of business; and no corporate action shall be taken, except by the affirmative votes of at least a majority of the whole number, as herein provided, of the members of the city council and no ordinance shall be passed on or adopted, except at a regular meeting of the city council. * * *"
Succinctly, plaintiffs contend that proper construction of section 35, which provides that a majority of the whole number of the members of the city council shall constitute a quorum for the transaction of business, and that such majority is required for the taking of corporate action, controls the appointive power granted to the city council under section 12. Under plaintiffs' contention, an appointment to fill a vacancy on the city council would require the affirmative vote of at least six of the members of the city council, since the whole number of the council is ten. Actually, there is no dispute between plaintiffs and defendants as to what constitutes the whole number of the city council. Defendants have conceded in their brief and oral argument that proper construction of the clause, "A majority of the whole number, as herein provided, of the members of the city council shall constitute a quorum for the transaction of business," results in a determination that the whole number of the East Orange city council is ten (there being provision in the charter for the election of two councilmen from each ward) and that a majority of such whole *100 number is six. There are many decisions in this State which support this construction of the aforementioned clause. See Mason v. Mayor, etc., of City of Paterson, 35 N.J.L. 190 (Sup. Ct. 1871); Doughty v. Scull, 96 A. 564 (Sup. Ct. 1915) (not officially reported); Dombal v. City of Garfield, 129 N.J.L. 555 (Sup. Ct. 1943); cf. Field v. Soffe, 79 N.J.L. 12 (Sup. Ct. 1909); Day v. Lyons, 70 N.J.L. 114 (Sup. Ct. 1903); State ex rel. Hawkins v. Cook, 62 N.J.L. 84 (Sup. Ct. 1898). All of the foregoing cases construe clauses reasonably similar to the clause in question, but none construes the charter presently before this court. In any event, construction of the provision which determines that a majority of the whole number of a body requires the presence of a majority of all seats of that body, whether filled or not, has been firmly established in our common law. See Hascard v. Somany, 1 Freem. 504, 89 E.R. 380 (K.B. 1693); Rex v. Bellringer, 4 T.R. 810, 100 E.R. 1315 (K.B. 1792); Cadmus v. Farr, 47 N.J.L. 208 (Sup. Ct. 1885); Ross v. Miller, 115 N.J.L. 61 (Sup. Ct. 1935).
Defendants argue that while section 35 of the East Orange charter requires a majority of the whole number of the East Orange city council, or six thereof, to be present to constitute a valid meeting for the transaction of business, only the affirmative vote of the bare majority of such quorum is necessary for the purpose of filling a vacancy which exists on the council. Defendants contend that proper construction of section 35 of the charter limits the requirement that no action be taken except by the affirmative votes of at least a majority of the whole number to corporate acts of the municipality; that since the filling of a vacancy on the council is not a corporate act the common law rule, that a majority of a quorum may act, must be read into section 12 of the charter providing for the appointive power of a council to fill such vacancies.
Plaintiffs concede that section 12 of the charter does not in itself contain any direction from the Legislature as to the requisite vote required to exercise the appointive *101 power of the council. They contend, however, that section 12 must be read with section 35, and that the acts taken by the council under section 12, in filling vacancies, constitute corporate action. The issue for decision is accordingly narrowed to the question of proper construction of the phrase "corporate action" as used in section 35 of the charter.
No case has been found decided by the courts of this State which construe the phrase "corporate action." A review of the various corporate charters contained in the revised statutes discloses no other charter containing a like phrase. No judicial review, upon which there has been a reported decision, has ever been sought to construe sections 12 or 35 of the East Orange charter.
In arguing that defendant Padrone was improperly seated as a member of the East Orange council, plaintiffs rely heavily upon the case of Ross v. Miller, 115 N.J.L. 61 (Sup. Ct. 1935). Ross v. Miller involved the attempt to fill vacancies in the council governing the City of Clifton under the provisions of L. 1923, c. 113 (R.S. 40:81-18 and 20). A municipal council of seven members was established under the charter. The requisite number were duly elected. Subsequently there were two vacancies created by death, in the council membership. At a meeting held and attended by the five remaining members of the council, three nominations were made to fill the vacancy. One nominee received five votes, plaintiff three votes, and the other nominee two votes. The nominee receiving five votes was thereupon declared elected to fill one of the vacancies. Neither plaintiff nor the other nominee was accorded membership on the council. Under the charter covering the City of Clifton, power was given to the municipal council in such a case to appoint properly qualified citizens to fill vacancies in that body. No requirement was set forth in the section of the charter granting the power of appointment to the council as to the number of members of the body whose concurrence was essential to fill the vacancy. Another *102 section of the charter provided that "a majority of all the members of the municipal council shall constitute a quorum, and the affirmative vote of a majority of all the members shall be necessary to take any action or pass any measure, except as otherwise provided in this act." In concluding that plaintiff was not entitled to be seated as a member of the city council, our former Supreme Court found an expression of legislative intent, in the charter, to change the common law rule that a majority of a quorum was empowered to fill a vacancy or take any other action within its proper sphere. The court found that the legislative injunction requiring a majority of all the members be necessary to take any action embraced the appointive power granted to the council under the charter.
There can be no dispute as to the reasoning or holding of Ross v. Miller. The case, however, is clearly inapplicable as a precedent to be used in construing the East Orange charter. The charter presently before the court requires that no "corporate action" shall be taken except by the affirmative votes of at least a majority of the whole number of the council members. This, I believe, is clearly not as sweeping as the requirement of this Clifton charter.
To emphasize their contention that the principles laid down in Ross v. Miller, supra, should determine the result in this case, plaintiffs further argue that the phrase "corporate action" should be regarded as having no other meaning than to indicate that acts of the city council taken as a body shall require the affirmative vote of at least a majority of the whole number. This argument, it seems to me, may be dispensed with summarily. It is well settled that the very existence of a municipal council or governing body is as a board or entity, and the members thereof can do no valid act except as a board. My understanding of the general legal rule is that, to bind a municipality, the council must be duly convened and act as a body in the manner prescribed by the law of its creation. Dey v. Mayor and Common Council of Jersey City, 19 N.J. Eq. 412 *103 (Ch. 1869); Schumm v. Seymour, 24 N.J. Eq. 143 (Ch. 1873); Keyport Sewerage Authority v. Granata, 52 N.J. Super. 76 (Law Div. 1958); 4 McQuillin, Municipal Corporations, § 1307, p. 447. To ascribe the meaning to the phrase "corporate action" urged by plaintiffs would, in effect, read the phrase out of section 35 of the East Orange charter.
In section 35 of the charter, a majority of the whole number of the common council is required to establish a quorum for the transaction of business. The plain meaning of this requirement is that at least six members of the city council must be present before a meeting thereof may be duly convened and any action taken by the council as a body. See Ross v. Miller, supra. It is also clear that once a quorum is present and a meeting of the council has been convened, corporate action undertaken by the council must, to succeed, receive unanimous consent if such quorum is constituted of a bare majority of the whole number. Under the common law rule, where a definite body existed a majority of the entire membership of that body constituted a quorum and a majority of the quorum could perform any act which the body was empowered to perform. The common law rule still obtains in this State, absent legislative modification thereof. As in all cases where a statute derogates from the common law, the statute must be strictly construed. See Ross v. Miller, supra. Considering these principles, the question is posed as to whether the taking of corporate action by the council constitutes the only method of transacting business by that body and, if not, does the exercise of the appointive power granted under Section 12 of the charter constitute corporate action. In Haight v. Love, 39 N.J.L. 14 (Sup. Ct. 1876), affirmed 39 N.J.L. 476 (E. & A. 1877), the relator filed an information against defendant for the purpose of testing the right of defendant to the office of city collector of Jersey City. One of the grounds upon which defendant's right to the office was challenged involved the failure to present the appointment, which was made by *104 the board of finance, to the mayor of the city for his approval or veto. In support of this argument the relator relied upon a section of the city charter which granted to the mayor the power to veto any action of any board within ten days after it was taken by the board. The Supreme Court, in an opinion by Mr. Justice Dixon, determined that the word "action" used in the charter could not receive the interpretation urged by the relator. The court found that "action" over which the mayor had veto power must be limited to those acts of the board of finance which partake of a legislative character and that it did not extend to the appointment of a city collector.
In McDermott v. Miller, 45 N.J.L. 251 (Sup. Ct. 1883), the relator sought a mandamus to compel the members of the city council of the City of Hoboken to admit him to the position of the office of city clerk. In granting the relief sought, since it was found relator was appointed by the majority of a quorum, the court expressed its opinion as to whether it was necessary for the mayor to approve the resolution appointing the relator to office. In resolving this issue the court stated, 45 N.J.L., at p. 256:
"* * * An election is usually ordered by ballot or viva voce, not by ordinance or resolution. These are used in legislative proceedings, and where they affect the interest of the city, it is important that the executive officer shall have the usual power of veto; but very serious embarrassment might follow if the mayor were given the authority to defeat the will of a majority of council in the appointment of city officers, where the law has not made him a member of that body. Legislative bodies are sometimes called upon to confirm the nominations made by an executive officer, but it is not usual to seek the approval of the executive for officers appointed by a legislative body. * * *"
Dombal v. City of Garfield, 129 N.J.L. 555 (Sup. Ct. 1943) involved the attempted appointment by the city council of the City of Garfield of a person to fill a vacancy in that body. Under the city charter (R.S. 40:107-1(1) et seq.), the city council was given the power to fill vacancies *105 occurring on the council. Under section 27 of the charter it was provided that "a majority of the whole number of councilmen shall constitute a quorum for the transaction of business, but a smaller number may meet and adjourn from time to time, * * *." The former Supreme Court found that the charter provision just quoted was so clear that there could be no question that it governed the acts of the council in accepting resignations and the selection of councilmen.
In Doughty v. Scull, 96 A. 564 (Sup. Ct. 1915), it was held that a provision of the charter of the City of Somers Point (R.S. 40:108-1(14)) which required "a majority of the whole number of members of the common council shall constitute a quorum for the transaction of business, but a smaller number may adjourn from time to time," controlled action by the city council in the filling of vacancies in the common council and further, that such action constituted the transaction of business.
The New Jersey authorities just cited make it clear that the action of a city council or municipal governing body in filling a vacancy in such body constitutes the transaction of business. These cases also indicate, in my opinion, that the act of filling a vacancy is not considered to be a legislative act evidenced by an ordinance or resolution in the manner commonly employed by the legislative branch of a municipal government. The cases indicate that the act of appointment carries out the exercise of a lesser power granted to the council by the Legislature. There can be no dispute but that the power of appointment to office is traditionally an executive act. Since, however, it is not essentially an executive function, it may be vested in departments other than the executive. In this State, it is generally found that statutes or charters governing the conduct of municipal affairs prescribe that the council or other local governing body shall have the power to appoint or select certain municipal officers and employees, including the power to fill vacancies in offices whether elective or appointive. See *106 3 McQuillin, Municipal Corporations, § 12.74, and New Jersey cases cited thereunder. Such a provision, of course, exists in the charter presently before this court.
In Housman v. Earle, 98 N.J.L. 379 (Sup. Ct. 1923), plaintiff challenged the right of defendant to sit as a member of the city commission of the City of Long Branch. Long Branch was governed under the Walsh Act (R.S. 40:72-1 et seq.) by a board of commissioners composed of five members. At a meeting in which four commissioners were present, one of the commissioners resigned and the name of defendant was placed in nomination for the office for the unexpired term. Upon a vote being taken, two of the commissioners voted for him and the other abstained, whereupon defendant was declared elected. The city charter provided that in the case of vacancy among the commissioners, the remaining commissioners should, within 30 days after such vacancy occurred, elect a qualified person to fill such vacancy for the unexpired term. The charter also provided (section 3) that "[A] majority of the members of the board of commissioners shall constitute a quorum and the affirmative vote of a majority of all the members shall be necessary to adopt any motion, resolution or ordinance, or pass any measure unless otherwise provided for in this act." The election of the defendant was sustained by the court on the ground that the procedure set forth for the adoption of motions, resolutions or ordinances, or to pass any measure, did not embrace the procedure to elect a person to fill a vacancy on the commission. In reaching this conclusion the court stated (98 N.J.L., at p. 382):
"* * * An election partakes of none of these administrative acts. It relates to a procedure to keep intact the governing body, as designed by the legislature. Where there is a vacancy, it is not to be filled by a motion, resolution, or ordinance or the passing of any measure, but by an election, according to parliamentary law, namely, a nomination for the office and a seconding of a nomination. * * *
In the absence of a statutory declaration that in cities where the commission consists of five members there shall be an affirmative *107 vote of three commissioners to fill a vacancy, or where the language of the statute permits an only inference to that effect, or where the statute is silent on the subject, as it appears to be in the present case, the common law rule must prevail, namely, that a majority of a quorum may lawfully fill such vacancy. * * *"
The decision in Housman v. Earle clearly establishes that the act of the governing body of a municipality in filling a vacancy therein does not partake of the usual legislative power which is exclusively within the domain of that body, and under which it must perform all valid corporate acts.
It is my conclusion that corporate action, as used in the East Orange charter, refers to action taken by the governing body of the corporation which partakes of legislative character and carries out the objects for which the municipal corporation was created or matters germane thereto. Considering this, I find that the act of the city council in filling a vacancy which exists in that body, relates to an act calculated to keep the governing body intact and not to the general objects for which the city of East Orange was created. Accordingly, since the Legislature has not prescribed the number of affirmative votes necessary to elect a person to fill a vacancy on the council, the common law rule which provides that a majority of a quorum is sufficient to act, applied to the action taken by the East Orange council in electing and seating the defendant Padrone.
The conclusion herein reached is amply supported by decisions in other jurisdictions.
In New York, the conception that there is a difference between the act taken by a municipal council to fill a vacancy in an elective office and other acts which are evidenced by ordinances and resolutions has apparently existed for some time. Thus in Achley's Case, 4 Abb. Pr. 35 (N.Y. Sup. Ct. 1856) it was held that the mayor of New York did not have the power of veto over appointments made by the common council under the charter of the City of New York. In reaching this conclusion the court stated (4 Abb. Pr., at p. 37):
*108 "* * * It seems to me, that the power of appointment is conferred by the laws exclusively upon the Common Council, to be exercised by them, irrespective of the concurrence or non-concurrence of the Mayor or other functionary.
The exercise of the power of appointment to office is a purely executive act; and when the authority conferred has been exercised, it is final, for the term of the appointee."
(And at page 39):
"It is apparent, from these provisions of the charter, that the action of the Mayor is confined to such matters as shall have passed both Boards, and which, with or without his sanction, would `take effect as an act or law of the corporation.' * * *
The act or resolution of appointment became an act of the common council, and not an act or resolution of the Corporation, and it is only in reference to the latter that the cooperation of the Mayor is invoked."
This clear pronouncement of a distinction between council action and corporate action seems to have been disapproved in People ex rel. Ennis v. Schroeder, 12 Hun. 413 (Sup. Ct. 1877), affirmed 76 N.Y. 160 (Ct. App. 1879). However, the Ennis case involved a charter of the City of Brooklyn which, apparently, was not similar to the charter of the City of New York. Later New York cases indicate that Achley's Case has not been overruled. See Morris v. Cashmore, 253 App. Div. 657, 3 N.Y.S.2d 624 (App. Div. 1937), appeal granted 254 App. Div. 725, 4 N.Y.S.2d 1003 (App. Div. 1937), affirmed 278 N.Y. 730, 17 N.E.2d 143 (Ct. App. 1938); Application of Crosby, 178 N.Y. Misc. 746, 36 N.Y.S.2d 301 (Sup. Ct. 1942), affirmed 265 App. Div. 92, 37 N.Y.S.2d 745 (App. Div. 1942).
The distinction has been recognized by the courts of Delaware, J. Ehrlich Realty Co. v. City of Dover, 124 A.2d 732 (Ch. 1956); Iowa, City of Nevada v. Slemmons, 244 Iowa 1068, 59 N.W.2d 793, 43 A.L.R.2d 693 (Sup. Ct. 1953); and Indiana, State ex rel. Walker v. Wagner, 170 Ind. 144, 82 N.E. 466 (Sup. Ct. 1907).
The conception that exercise of the power of appointment to public office is an executive act has long been *109 established in our law. See Marbury v. Madison, 1 Cranch, 137, 2 L.Ed. 60 (U.S. Sup. Ct. 1803)
The basis for differentiating the executive act of appointment from a purely legislative act is found in the nature of the act of appointment which, it is stated, represents the exercise of the whole power of the one appointing, with the result that rights flowing from such exercise cannot be extinguished merely by executive will; whereas, laws or acts of the Legislature are repealable at the will of the lawmaker, provided that the constitutional inhibition against the impairment of the rights under contracts is not violated. Marbury v. Madison, supra.
In reaching my conclusion, I have also considered the relationship of sections 12 and 35 of the city charter to each other. Section 35, after providing that a majority of the whole number of the council must be present to constitute a quorum for the transaction of business, then devotes itself to the procedures thereby taken by the council in adopting ordinances and resolutions. The section includes directions to the council as to the vote to be taken in the event that the mayor should disapprove or veto any ordinances or resolutions adopted by the council. The detail of section 35, when compared with section 12, which simply contains a grant of power to the council to fill vacancies in appointive offices, is significant. Clearly, the Legislature had in mind that no ordinances or resolutions should be adopted by the council without the affirmative vote of a majority of the whole number; the legislative concern was with the legislative action of the city council. The form prescribed by the Legislature for the adoption of ordinances and resolutions cannot be ascribed to the appointive power granted under section 12, except by sheer inference. This, to my mind, is not sufficient, in construing the charter, to find that the Legislature has intended to abrogate the common law rule that a majority of a quorum may act in the case of an appointment. See Ross v. Miller, supra; Housman v. Earle, supra.
*110 It should also be observed that, in acting to fill a vacancy existing on the council, the council acts to provide representation for only one ward of the city, and therefore does not act on behalf of all the inhabitants. Cf. Horwitz v. Reichenstein, 15 N.J. 6, 9 (1954).
The city council for the City of East Orange, having been duly convened on January 9, 1961, in a meeting at which more than a majority of the whole number was present, and the defendant Padrone, upon nomination and seconding, having received the affirmative votes of a majority of that quorum, it is my determination that Mr.Padrone was validly elected as a member of the city council of the City of East Orange to fill the vacancy caused by the resignation of Mr. Ruhnke.