THE STATE, EX REL. JOHN B. HAIGHT, v. JAMES H. LOVE.

1. Where the commencement of an official term is not otherwise fixed, the term begins as soon as the appointee is authorized, by his own action, to legally assume the duties of his office, and not merely when he actually enters upon the office.

2. Under the second section of the supplement to the charter of Jersey City, approved March 24th, 1873, (*Pamph. L.* 400,) the mayor's power to veto extends only to such action of the city boards as partakes of a legislative character, and not to the appointment of city collector.

3. When a board has completely exercised its power of appointing a person to an office, and that person is not removable at the will of the board, a rescission of the appointment will not affect the right to the office.

4. The power to remove an officer " for cause," can be exerted only for just cause, and after the officer has had an opportunity for defence.

On demurrer to *quo warranto*.

Argued at June Term, 1876, before BEASLEY, CHIEF JUSTICE, and Justices SCUDDER, DIXON and REED.

For the relator, *James B. Vredenburgh*.

For the defendant, *Gilbert Collins*.

The opinion of the court was delivered by

DIXON, J.   The Attorney-General, at the instance of John B. Haight, the relator, filed an information in the nature of a writ of *quo warranto*, against the defendant, James H. Love, for the purpose of testing the right of the defendant to the office of city collector of Jersey City.

The information sets out, as the basis upon which the defendant rests his claim to the office, the following facts : That the defendant was appointed city collector on May 7th, 1872, under the charter of Jersey City, passed March 31st, 1871,

Haight v. Love.

by force of which, his term of office was to commence on the third Tuesday of May, and continue for one year, or until his successor should qualify; that on April 10th, 1873, he was again appointed city collector by the Board of Finance and Taxation of the city, under a supplement to the charter, approved March 24th, 1873, by which it was enacted that that board should appoint a city collector, who should hold his office for the term of three years, and that the term of office of the then present city collector should expire as soon as the city collector to be designated under that act was appointed and qualified; that under that last appointment, he took the oath of office April 14th, 1873, and gave the bond required of him for the faithful performance of his official duties on May 15th, 1873; that on April 6th, 1876, the Board of Finance and Taxation did again appoint the defendant to the same office, for a further term, under which appointment he, on April 7th, 1876, took the official oath.

The information impugns the validity of the last appointment, upon the ground that the action of the board in making it was never presented to the mayor of the city for his approval or veto, and was never approved by him; and the further ground that the preceding term of the defendant did not expire until April 14th, 1876; and on or before April 12th, 1876, the term of office of three members of the Board of Finance and Taxation, which consisted of only five members, expired, and consequently that board had not the right of appointment; and on the 13th of April, A. D. 1876, the board, composed of the two members holding over and the three new members, rescinded his appointment and appointed the relator as city collector.

To this information the defendant demurs, and insists that the facts alleged show his right to the office, the reasons urged to the contrary notwithstanding.

In examining the issues thus raised, the first point to be determined is, the exact time of the ending of the defendant's term under his appointment of April 10th, 1873. By the supplement of 1873, he was to hold his office for the term of

three years. It therefore ended three years after it began. When did it begin? The relator insists that it did not begin until the expiration of the term that preceded it, which, by the supplement, was to expire when the collector designated under it was appointed and qualified; and that as the defendant, being so designated, did not qualify before April 14th, 1873, (when he took the oath of office,) therefore his new term did not begin before that date, and, consequently, did not end before April 14th, 1876, prior to which the Board of Finance was changed.

Inasmuch as the charter, although it provides that the appointee, before entering upon the duties of his office, shall take an official oath, does not expressly fix the commencement of his term, such commencement must be ascertained by the application of some general principle. What that principle should be is a subject which does not seem to have received much judicial consideration. Of the cases to which we are referred by counsel for the relator as sustaining the rule he contends for, only one, that of *Brodie* v. *Campbell*, 17 *Cal.* 11, has any relevancy, and even in that, the rule was not necessary for the decision. The question there was, whether the election at which Brodie had been elected, or that at which Campbell had been elected, was the one next preceding the end of Norton's term. Brodie had been chosen in September, 1859, and Campbell in November, 1860. Norton had been elected September 7th, 1854; his commission had been issued by the governor, December 26th, 1854, and he had taken the oath of office January 2d, 1855, and his term was six years. The court held that Campbell's election, and not Brodie's, was that which the more closely preceded the expiration of Norton's term. But it is evident that this result followed whether the issuance of the commission or the taking of the official oath marked the beginning of the term; whether it ended December 26th, 1860, or January 2d, 1861, and on the former ground, I think, the decision was right. The judges, indeed, in deciding the cause, expressed the opinion that Norton's term, or *full* term, as Field, C. J., speaks of it,

·commenced with his qualification, he having qualified within the ten days allowed by law for that purpose, after the receipt of the commission ; but in their opinions, they intimated several reasons, which, I think, made the adoption of a different rule more consonant with public policy. " The record in the office of the Secretary of State," says Chief Justice Field, " will show when the commission issued, and upon that record, the governor will be presumed to act, when notifying the public by his proclamation, of the offices to be filled at any given election." Baldwin, J., in the same case said, " It is unreasonable to suppose that the legislature designed to fix the commencement of the term at an earlier period than that at which the incumbent could enter upon the office. * * * * We do not mean to say that a person appointed to a vacancy may delay to qualify as long as he chooses, and then fix his regular term from the act of qualification, for that would be to perpetuate the office in himself; * * * but that the rule in this case is, that the new term commences with the qualification, the modification of the proposition being that this qualification must not be unreasonably deferred."

The objections against the rule relied upon by the relator, are that it makes the term of office ascertainable only by reference to an act *in pais*, of which the officers concerned in the selection of a successor would generally have no knowledge, and perhaps no accurate means of information ; that it leaves the beginning and ending of the term to be fixed, not by the appointing power, but by the appointee, and so in many cases enables the appointee to extend the legal tenure of his predecessor, without abridging his own. Such a power would be liable to great abuse in the case of an officer re-appointed to the same office. Nor does the modification suggested that the qualification must not be unreasonably deferred, evade the objections. " Unreasonably " is an elastic expression, and only mitigates, does not remove, the evils. The tenure of public offices should be rendered as definite as possible.

In my judgment, the true rule is, that as soon as the ap-

pointee is authorized by his own action to legally assume the duties of his office, then his term should be regarded as begun, unless some other period is clearly fixed by the proper authority.   That the term of his predecessor lawfully continues until he does actually assume those duties, seems to me in no wise to militate with this principle.   There is not the slightest inconsistency between the right to enter upon an office being vested in one person, and the right to hold the office, until such entry, being vested in another.   The terms of both, indeed, run together, but those terms are not incongruous, and the very act which alone could render them conflicting—entry by the owner of the later term—ends the earlier one.   By this principle, the beginning of an official term otherwise undefined, is made dependent upon the will of the appointing powers, and is ascertainable by reference to the records of their proceedings, and the person chosen is left to be impelled by his interest to put himself forthwith in compliance with the will of those who have chosen him.   The rule thus stated coincides with the rule adopted for determining the commencement of an estate for years in lands, to which such terms of office bear some analogy.   An instrument reciting that " A does this day agree to let to B certain premises for the term of ten years," was held to be a present demise of a term commencing forthwith. *Staniforth* v. *Fox,* 7 *Bing.* 590, and cases cited.

Hence, I conclude that when on April 10th, 1873, the Board of Finance appointed the defendant city collector for a term of three years, without naming any day for the beginning of the term, and none being named in the charter, the term during which he might lawfully hold the office under that appointment, began on that day, and, consequently, ended with the close of April 9th, 1876.

By a supplement to the city charter, approved March 27th, 1874, it was enacted " that the term of office of each of the present members of the Board of Finance and Taxation shall expire on the second Monday of April next; and thereafter said board shall consist of five persons,      *      *      *      *   .

Haight v. Love.

two of whom shall hold office for one year, and three for two years; and whose term of office shall commence on the said second Monday of April next. * * * * Persons chosen to succeed incumbents shall hold office for two years." The second Monday of April in that year was April 13th, and the term of the three members commencing on that day and continuing two years—*i. e.*, both by common law and express statute, calendar years—would expire with the close of April 12th, 1876, as alleged in the information, and consequently it appears that the persons who composed the board at the time of the defendant's last appointment, April 6th, 1876, likewise composed it at the expiration of his then existing term, April 9th, 1876, and had the right to select the officer for the succeeding term.

It is, however, further objected to the validity of this appointment, that it was not presented to the mayor of Jersey City for his approval or veto, and was never in fact approved by him. The statute relied on to support this objection is the second section of a supplement to the city charter, approved March 24th, 1873, which enacts " that the mayor shall have power to veto the action of any board within ten days thereafter ; and all ordinances and resolutions shall be certified and forwarded to the mayor, as now required by law ; and unless said board shall, by a two-thirds vote, at its next meeting after receiving notice thereof, vote to sustain said action, notwithstanding said veto, said action shall be void." The word " action " used in this section, is, standing alone, of very wide import, but it cannot receive such interpretation here. The adoption of a motion to lay on the table or to adjourn, would be the action of the board, but certainly such action was not designed to be subject to the mayor's veto. The word must be here limited to those classes of actions which are directed to be certified to the mayor, viz., resolutions and ordinances. The Board of Finance does not act by ordinance, and therefore the question is, whether the appointment of city collector is embraced within the class of actions here denominated resolutions.

· Statutes similar to the present have been in the courts of this state before, for construction. In *State* v. *Newark*, 1 *Dutcher* 399, Vredenburgh, J., in delivering the opinion of the court, considers them as resembling the veto clauses in the state and federal constitutions, and says that they make the · mayor a distinct and separate branch of the legislative power, and that the resolution can have no vitality until the legislative power of the mayor has been invoked upon it. In a later case, *Howeth* v. *Jersey City*, 1 *Vroom* 93, the same learned judge limits the power of veto to the final law, and fortifies his opinion by remarking that the section then under consideration, by which the right of veto was given, provided that if the resolution or ordinance were passed over the veto by two-thirds of the council, it should take effect as a law, and if not returned by the mayor within a prescribed time, it should become a law. Like phraseology exists in the twenty-third section of the present charter of Jersey City, and with that section must this second section of the supplement of 1873 be construed, in order to correctly reach the purpose of the legislature. Indeed, it is only on the theory that, by this second section, the legislature intended to confer upon the mayor the same rights and powers over the action of all the other boards as, under that twenty-third section, he had over the action of the Board of Aldermen, that the necessity of formal presentation to him as a pre-requisite to the validity of such action, can be established. I think, therefore, that only those acts of the Board of Finance which partake of a legislative character, are subject to the mayor's veto, and that his negative does not extend to the mere appointment of the city collector.

The justness of this conclusion is seen also on considering the inaptitude of the word " resolution " to signify the election of an officer. While, indeed, an officer may be chosen by resolution, such a mode is rarely adopted. Usually a vote by ballot or *vivâ voce*, indicates the choice. And though it is quite clear that the legislature did not intend to make the mayor's power dependent on the form in which the boards

acted, it is almost equally sure that they did not mean to extend his power beyond such action as usually, in organized assemblies, takes the form of resolution or ordinance.

Besides, the course now contended for by the relator is an inversion of the common practice, when an individual and a board or body of several are to unite in the selection of an officer. Almost universally the individual nominates and the board ratifies or rejects. But here, it is claimed, the board is to nominate and the individual is to ratify or reject. The legislature, of course, might adopt such a scheme, but I think when they do, they will make it known in language more explicit than that used in this charter.

The relator further insists that the rescission of the defendant's appointment on April 13th, 1876, terminated his rights under it. This contention also must fail. What I have already said shows my conviction that the choice of the Board of Finance was alone necessary to the appointment of the defendant, and the language of Chief Justice Marshall, in *Marbury* v. *Madison*, 1 *Cranch* 137, 157, is here applicable: "Some point of time must be taken when the power of the executive over an officer not removable at his will, must cease. That point of time must be when the constitutional power of appointment has been exercised. And this power has been exercised when the last act required from the person possessing the power has been performed." On April 13th, 1876, not only had the last act of the appointing power been performed, but the defendant had actually taken the oath of office and entered upon his duties. The power of rescission then was clearly gone. The counsel for the relator suggested that as the defendant had not yet given an official bond, and the Board of Finance had not taken final action in fixing the amount of bond to be required, the appointment was still incomplete. But neither the charter nor any action of the Board of Finance made any of these things conditions precedent, either to the vesting of right to the office or to the actual entry upon its duties. A failure to give such bond as might be required, would doubtless furnish cause for removal,

but removal was necessary to end his title. Nor can this rescission be regarded as a valid removal. The section under which the defendant was appointed, gave the board power to remove " for cause." The cause intended is just cause, and the power may be exerted only after the officer has had opportunity for defence. Such has been the well-settled law since the resolutions in *Bagg's case*, 11 *Rep.* 93, corrected and so established by Lord Mansfield's opinion in *Rex* v. *Richardson*, 1 *Burr.* 517.

It is not pretended that there was any just cause for removing the defendant, or that he had any opportunity to be heard before his appointment was rescinded. Hence, that rescission can derive no efficacy from this power of removal.

I conclude, therefore, that the information sets out a valid title to the office of city collector vested in the defendant, and alleges no lawful reason for ousting him.

Judgment should be entered in favor of the demurrant.