LEON ANSCHELEWITZ, PROSECUTOR-APPELLANT, v. BOR-OUGH OF BELMAR, A MUNICIPAL CORPORATION, DE-FENDANT-RESPONDENT.

Argued April 18, 1949—Decided May 2, 1949.

*Mr. Milton M. Unger (Messrs. Milton M. & Adrian M. Unger,* attorneys) argued the cause for the appellant.

*Mr. Ward Kremer (Mr. Ward Kremer* and *Mr. Harry R. Cooper,* attorneys) argued the cause for the respondent.

The opinion of the court was delivered by

VANDERBILT, C. J.  The prosecutor, Leon Anschelewitz, had for some years leased from the defendant, Borough of

Belmar, all of its boardwalk concessions and then sublet them at substantial profit to himself. One of these leases was made in March, 1945, for a term of three years, expiring November 1, 1947, at a rental of $6,700 for the entire term. By his own admission the prosecutor conceded that he received more than this sum through subletting for merely a single summer season. In February, 1947, while the 1945 lease was still effective, the prosecutor requested the borough officials to consider a new lease to him. Pursuant to a suggestion of the then mayor and the other borough commissioner (the third commissioner having died in January) the prosecutor appeared at a regular meeting of the Borough Commission held on February 4, 1947, bringing with him a draft of a new lease for a four year period commencing, singularly, February 4, 1947, and terminating February 4, 1951, at a total rental of $11,500. The lease was executed by the mayor and acting borough clerk on behalf of the borough and by the prosecutor that same evening in a side room after the public meeting.

Although the minute book of the borough, which was introduced in evidence on the taking of depositions in this matter, shows a notation of a resolution having been passed by the mayor and his fellow commissioner at the meeting of February 4, 1947, authorizing the borough attorney to draft a lease of the concessions, two experienced newspaper reporters, who testified that they were present from the opening of the meeting until adjournment, said that they heard no such resolution introduced or adopted. Their accounts of the meeting published in their newspapers bear them out for they contained no reference whatever to any such resolution or lease. They also attended the next commission meeting held on February 11th and listened to the reading of the minutes of the meeting of February 4th, but there was no mention of the resolution or of the lease. All this is significant because of the interest in the community in a widely publicized case in nearby Asbury Park involving the leasing of certain of its boardwalk concessions without advertising, and in the bearing of that litigation on the same problem in Belmar. The oncoming municipal election in May was casting its shadow before it.

During the succeeding months a hotly contested election campaign was waged, with one of the chief issues centering on the practice of the incumbents of leasing the boardwalk concessions without advertising for bids. At various campaign meetings and in a number of campaign releases the then mayor stated only that the concessions leased to the prosecutor were held by him under the three-year lease of 1945. Not once did he mention the lease executed on February 4, 1947. In April, one of the opposition candidates, Howard Hayes, sought to examine the municipal minutes and records, but was refused permission by the then mayor until after the election on May 13th. Following an application by Hayes for a writ of *mandamus* to permit such inspection, the mayor capitulated and Hayes and a companion examined the minute books. Hayes testified on the taking of depositions that he looked at the minute book with care, but found no reference whatever to the February, 1947, lease. When he asked the acting borough clerk to show him all leases, the 1947 lease was not produced.

The incumbents were defeated at the election and a new board of commissioners took office on May 20, 1947. On the occasion of the organization meeting, the 1947 lease came to public light for the first time, when the acting borough clerk turned it over to the new mayor with the statement that she had put it in her general files at the time of its execution and had forgotten to refile it with the other leases of the borough and that while cleaning out her files preparatory to turning over her duties to the new borough clerk she had just run across it. In her testimony she claimed she had fogotten all about it when asked by Hayes to produce all leases.

Thereupon the new board of commissioners, although recognizing the 1945 lease and accepting the prosecutor's tendered rental in payment only to the amount due on this lease for the summer of 1947, refused to consider itself bound by the 1947 lease. On March 9, 1948, the board adopted a resolution authorizing the leasing of the boardwalk concessions on bids after public advertisement and directed the borough clerk to advertise for bids. The bids received on all of the conces-

sions in the aggregate for a single year exceeded the rental agreed to be paid by the prosecutor for the full four years under the 1947 lease.

The prosecutor thereafter applied for and was granted a writ of *certiorari* to review the resolution of March 9, 1948, contending that it was invalid in view of the prior commitment made by the borough to him under the lease of February, 1947. After argument the former Supreme Court held (1) that there was no statutory requirement that the borough could lease only upon advertisement and bids, (2) that the resolution of February 4, 1947, awarding the lease to prosecutor "was not publicly and legally adopted and therefore of no force and effect," and (3) that the rule of law prohibiting a collateral attack upon municipal ordinances or resolutions did not prevent the court in a case involving fraud and bad faith "from looking to evidence concerning the approval of the resolution beyond the minute book of the municipality," 137 *N. J. L.* 617 (1948). From this judgment the prosecutor appeals.

It will serve no useful purpose to review at length all the extraordinary circumstances surrounding the lease and the resolution of February 4, 1947. Too many acts and statements are left unexplained. Why execute a lease in February, 1947, effective immediately, when the existing lease of 1945 did not expire until November? The prosecutor explains that he wanted security in order to make improvements on the leased property. The borough officials, on their part, feared another depression. But where in the new lease is there any provision for such improvements? Except for dates and amounts it is identical with the old lease. The resolution of February 4th authorized the borough solicitor to draw up a lease and provided for "payments outlined in lease," but where is the proof of compliance with the resolution? The borough solicitor was not even called as a witness. But why such a resolution at all, when the prosecutor had brought a new lease with him and the borough officials had obligingly signed it? Why did the borough commissioners fail to act on the lease at a public meeting? Why did the then mayor refuse to permit

an inspection of the minute book and leases by an interested citizen until subjected to judicial pressure? Why did the acting municipal clerk thereafter conceal the resolution and the lease until the election was over and the new commission was about to organize? Why did the then mayor throughout the campaign conceal the existence of the 1947 lease? Why if the 1947 lease were to take effect immediately, notwithstanding the fact that the 1945 lease did not expire until November, 1947, was there no release of the unexpired term of the 1945 lease? Was the prosecutor to pay rent from February to November under each lease? One might continue indefinitely asking pertinent questions nowhere answered by the evidence.

We agree with the former Supreme Court that the lease of February 4, 1947, with the prosecutor, was illegally executed, but we prefer to base our judgment on the single ground that there never was any municipal action authorizing the execution of the lease presented to the borough commission on February 4, 1947, and executed by it on that day. A municipality cannot act as an individual does. It must proceed in conformity with the statutes, or in the absence of statute agreeably to the common law, by ordinance or resolution or motion, *City of Burlington v. Dennison*, 42 *N. J. L.* 165 (*E. & A.* 1880); *N. J. Good Humor, Inc., v. Bradley Beach*, 124 *N. J. L.* 162 (*E. & A.* 1939). Especially is this so where real property is concerned. The only official action that purports to justify the lease of February 4th is the resolution of that date. But the resolution did not authorize the lease brought to the meeting by Anschelewitz. The resolution merely authorized "the borough solicitor to draw up (*sic*) lease with Leon Anschelewitz for the following concessions (listing eight) all located adjacent to the Boardwalk in the Borough of Belmar, New Jersey, for the term commencing February 4, 1947, and expiring on February 4, 1951, at the term rental of Eleven Thousand Five Hundred ($11,500.00) Dollars, payments outlined in lease."

The lease in controversy is not the lease authorized in the resolution. The lease in controversy was prepared by Anschelewitz; the lease the resolution contemplates was to be

prepared by the borough solicitor. Apparently the borough solicitor never prepared a lease, why not we are not told. It may well be he was never asked to do so. In any event, it is significant that he was not called as a witness. Moreover, the resolution goes no further than to authorize the borough solicitor to prepare a lease, which the commission was free to accept or reject. The actual execution of a lease is nowhere authorized by resolution. Nor have the schedule of payments under the lease, which were to emerge for the first time in the lease to be prepared by the borough solicitor, ever been passed upon in public meeting by the borough commission. That obviously would be impossible until the borough solicitor submitted his draft of a lease to the commission. The schedule of payments of rent in a lease is one of its most vital terms. Conceivably the lessee might have had in mind payment of the entire rent on the last day of the four-year term, the lessor on the first day. The municipality has never expressed itself officially on one of the most important terms of a lease, nor had the prosecutor been heard on that subject. At no time was the municipality bound to accept the lease to be submitted to it by the borough solicitor. It necessarily follows that the lease of February 4, 1947, prepared by the prosecutor and signed by the mayor and acting borough clerk on February 4, 1947, is entirely unauthorized and therefore void and illegal.

Having reached this conclusion on the basis of the inadequacy of the resolution of February 4, 1947, a conclusion which is peculiarly inescapable in view of the many suspicions and entirely unexplained circumstances surrounding the transaction, we do not find it necessary to pass at this time on the specific holdings of the former Supreme Court, but they will be reserved for later consideration in appropriate cases.

The judgment below is affirmed.

*For affirmance*—Chief Justice VANDERBILT, and Justices CASE, OLIPHANT, BURLING and ACKERSON—5.

*For reversal*—None.