187 N.J. Super. 588 (1982)
455 A.2d 575
TOWNSHIP COMMITTEE OF THE TOWNSHIP OF EDGEWATER PARK, PLAINTIFF,
v.
EDGEWATER PARK HOUSING AUTHORITY, DEFENDANT.
Superior Court of New Jersey, Law Division Burlington County.
Decided October 30, 1982.
*591 Frederick W. Hardt for plaintiff (Sever & Hardt, attorneys).
David F. Norcross for defendant (Myers, Matteo, Rabil & Norcross, attorneys).
HAINES, A.J.S.C.
The Township Committee of Edgewater Park, as permitted by N.J.S.A. 55:14A, The Local Housing Authority Law, adopted ordinance 2-81 creating defendant Housing Authority. The ordinance became effective on February 22, 1981. It provided for a membership of six persons, five members (commissioners) to be appointed by the township committee and one by the Director of the Public Housing and Development Authority of the State Department of Environmental Protection. The five committee appointments were made on March 11, 1981. No member was appointed by the Director.
Unfortunately, when Ordinance 2-81 was enacted the township committee failed to consider the 1975 amendments to the Local Housing Authority Law which increased membership requirements for the Authority from six to seven, five to be appointed by the governing body, one by the mayor, and one by the Director. N.J.S.A. 55:14A-4. When this oversight was recognized, the committee, uncertain as to its effect, adopted a complete new housing authority ordinance, effective August 26, *592 1981  Ordinance 15-81. This differed from the prior ordinance, 2-81, only in its provision for a seven member Authority, in accordance with the amended statute. The five committee appointees continued in office without further formal action. The mayor appointed a sixth member on October 7, 1981. No member has ever been appointed by the Director. The five members, joined by the sixth after October 7, 1981, took numerous actions on behalf of the Authority.
On December 31, 1981 the mayor issued certificates of appointment to each of its six commissioners, setting forth the dates on which their terms of office commenced and expired. Charles Crook, an original appointee of the committee, received a certificate stating that his one-year term commenced on August 26, 1981, the effective date of the second ordinance. The Authority therefore claims that his term did not expire until August 25, 1982. Plaintiff, a differently constituted governing body than the 1981 township committee, claims that his term expired on March 10, 1982, one year after his appointment, or on March 25, 1982 when he attended the first meeting of the Authority and is therefore said to have first assumed the duties of his office.
Plaintiff also raises questions concerning the Sunshine Law, N.J.S.A. 10:4. Issues concerning the payment of attorney's fees are addressed by both parties. Plaintiff's significant argument, however, is that ordinances 2-81 and 15-81 are legally defective, that they did not succeed in creating the Authority.

A. The Creation of the Housing Authority

I conclude that ordinance 2-81 effectively created the Housing Authority. This was the obvious and primary intention of the township committee when it adopted that legislation, an intention which was reiterated when ordinance 15-81 was passed only five months later. The record reflects a candid admission of oversight in the failure to consider the 1975 statutory amendment increasing the membership of the Authority from six to seven, an oversight which the committee attempted *593 to correct by adopting the second ordinance. Clearly, it did not matter to the governing body whether the Authority was to operate with six or with seven members. Its intention was to comply with the statutory mandate. The failure to establish correct membership requirements for the Authority need not and should not frustrate that intention. The obligation of the court is to do otherwise  to so read the ordinance, if possible, as to make the legislative intention effective, Schierstead v. Brigantine, 29 N.J. 220, 230 (1959). That reading is entirely permissible here.
The membership requirements for the Authority, insofar as the ordinance is concerned, are superfluous. The statute is mandatory. N.J.S.A. 55:14A-4 provides that "the authority shall consist of seven members ..." (emphasis supplied). Thus, the statute itself provides for the Authority's membership; repetition of its language in the municipal legislation was not necessary; that language became a part of the ordinance as a matter of law. This is particularly true of housing authorities which the courts consider to be independent entities, receiving their powers directly from the Legislature pursuant to the statute. Thus, in Monte v. Milat, 17 N.J. Super. 260 (Law Div. 1952), Judge [later Justice] Proctor said:
... [A]ll that is entrusted to the municipality is the creation of the authority, not the delegation of the powers. The powers of the authority are derived, not from the municipality, but from the State and the governing body of the municipality in deciding upon the desirability of creating an authority and in exercising power of appointment and removal of its members is acting merely as a statutory agent. [at 265]
See, also, Tumulty v. Jersey City, 57 N.J. Super. 503, 511 (App. Div. 1959); Paterson v. Paterson Housing Auth., 96 N.J. Super. 394, 404 (Law Div. 1967). The automatic nature of the statute is further emphasized by the provision in the 1975 amendment to N.J.S.A. 55:14A-4, which dealt with authorities having only six members. It reads:
The chief executive of a county or municipality which has heretofore created a housing authority consisting of five members appointed by the governing body, shall forthwith appoint one additional commissioner for a 5-year term.
*594 Thus, the Legislature did not require the adoption of an ordinance in order to establish a seven-member board under the new law.
The rule adopted here, which made it unnecessary to repeat statutory language in the ordinance, is set forth in Duffcon Concrete Products v. Cresskill, 1 N.J. 509 (1949), a zoning case:
The guiding standards which govern the board of adjustment are carefully set forth in R.S. 40:55-39 [now N.J.S.A. 40:44D-70] provided for in the zoning ordinance, its powers stem directly from the statute... and may not in any way be circumscribed, altered or extended by the municipal governing body. Under these circumstances, the inclusion in the zoning ordinance of a word for word recital of the statutory powers of the board of adjustment would be superfluous. [at 515-516]
This approach is also supported by general guidelines for the construction of legislation. For example, in New Capitol Bar & Grill Corp. v. Employment Security Div., 25 N.J. 155 (1957), the court said:
It is frequently difficult for a draftsman of legislation to anticipate all situations and to measure his words against them. Hence cases inevitably arise in which a literal application of the language used would lead to results incompatible with the legislative design. It is the proper function, indeed the obligation, of the judiciary to give effect to the obvious purpose of the Legislature, and to that end "words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms." [at 160]
See, also, State v. Madewell, 117 N.J. Super. 392 (App.Div. 1977), in which the Appellate Division said:
In reaching this interpretation of N.J.S.A. 2A:111-35 we have followed the accepted doctrine of disregarding punctuation, and adding or deleting words or phrases where necessary to arrive at the legislative intent. [at 396]
The interplay of the mandatory, automatic statutory rule and the rule regarding the severability of legislative enactments, permitting significant provisions in a particular enactment to survive when other provisions are struck down, also permits this result. The severability rule is described in Affiliated Distillers v. Sills, 56 N.J. 251 (1970):
Severability is a question of legislative intent. The governing principle is whether it can be fairly concluded that the Legislature designed the statute to stand or fall as a unitary whole. In reaching this conclusion, we must determine whether the objectionable feature can be excised without substantial impairment *595 of the principal object of the statute. An entire statute will not be invalidated when one clause is found to be unconstitutional unless that clause is so intimately interconnected with the whole that it can be reasonably said that the Legislature would not have enacted the statute without the offending clause. [at 265; citations omitted]
This rule, applied to the housing authority ordinance, permits the excision of its erroneous provision for an authority of six members; the rule regarding the automatic application of statutory provisions permits the substitution of the seven-member requirement of the Housing Authority Law.
In view of these conclusions, Ordinance 15-81 is of no moment. It attempted to do that which had already been done. Ordinance 2-81 completely exhausted the legislative delegation of power to the municipality with respect to the Authority, except the power to appoint its members. The Housing Authority was thereafter an independent public body operating under the powers conferred upon it directly by statute. Paterson v. Paterson Housing Auth., supra; Beyer v. Mt. Holly Tp. Comm., 6 N.J. Super. 409, 412-413 (Law Div. 1949).

B. Ordinance 15-81; Its Procedural Irregularities

A further problem exists with reference to ordinance 15-81, a problem that need not be addressed in view of the foregoing except for the fact that the obligation of a trial court is to dispose of all issues so that possible appellate reversals do not require remands. This ordinance received its first reading on July 8, 1981 and was to be considered for final passage on August 12, 1981. Notice of that hearing was published accordingly. However, the committee was not able to obtain a quorum on August 12 and held no meeting. A notice, over the name and title of the township clerk, was tacked to the door of the municipal building advising that the scheduled meeting was cancelled and stating:
The Township Committee of the Township of Edgewater Park has cancelled the Regular Meeting scheduled for Wednesday evening, August 12, 1981, at 8:00 P.M. because of the lack of a quorum. The business will be conducted at a Work Session scheduled for August 26, 1981, at 8:00 P.M. at the Municipal Building.
*596 No meeting was held by the township committee to cancel the August 12 meeting or to authorize its postponement to any particular date, or to authorize the posting of the notice by the township clerk. Mandated statutory procedures for the adoption of ordinances were therefore ignored. N.J.S.A. 40:49-2 provides, in pertinent part, that
(a) [e]very ordinance after being introduced ... shall be published ... together with a notice of .. . time and place when and where it will be further considered for final passage ...
(b) [a]t the time and place so stated in such publication, or at any time and place to which the meeting for the further consideration of the ordinance shall from time to time be adjourned, all persons interested shall be given an opportunity to be heard concerning the ordinance....
Our decisions require strict compliance with these procedures. Catalano v. Pemberton Tp. Bd. of Adj., 60 N.J. Super. 82 (App. Div. 1960); Masnick v. Cedar Grove, 99 N.J. Super. 436 (Law Div. 1968). A meeting, once started, may be adjourned by a governing body without further publication. The announcement at the public meeting, in the presence of those persons in attendance, is sufficient notice. LaRue v. East Brunswick, 68 N.J. Super. 435, 451-452 (App.Div. 1961). Here, no meeting was held, no valid adjournment was authorized and no appropriate notice of the adjournment or of the new date for further consideration of the ordinance was given. Consequently, for these additional reasons, Ordinance 15-81 is invalid.

C. The Membership of the Authority; Its Power to Act

The fact that Edgewater Township had a validly created housing authority does not mean that its Authority was empowered to act. N.J.S.A. 55:14A-4 required the Authority to have seven members, five appointed by the governing body, one by the mayor, and one by the Director of the Public Housing and Development Authority of the State Department of Environmental Protection. Only the five appointees of the governing body were in office after the creation of the Authority until October 7, 1981 when the mayor made his appointment. The Director's appointment has never been made. Since the Director has never been represented, the Authority has been *597 deprived of his views. The same is true as to the mayor's appointee, with respect to any actions taken prior to October 7, 1981. Nevertheless, I conclude that the Authority was authorized to act without these appointees.
"Under the common law rule, where a definite body existed a majority of the entire membership of that body constituted a quorum and a majority of the quorum could perform any act which the body was empowered to perform." Prezlak v. Padrone, 67 N.J. Super. 95, 103 (Law Div. 1961). This rule applies unless the applicable legislation provides otherwise. In Prezlak, for example, legislation provided that a quorum consisted of "a majority of the whole number ... of the members of the City Council...." A second and separate provision, however, provided for the filling of vacancies in the membership of city council without making any provision for a quorum. The court held that six out of ten members would be required to be present in order to take action under the first section, and that five were sufficient under the second. The Local Housing Authority Law, N.J.S.A. 55:14A-6, which applies in the present case, contains an express provision for a quorum. It says:
Four members shall constitute a quorum of the authority for the purpose of conducting its business and exercising its powers and for all other purposes. Action may be taken by the authority upon the affirmative vote of the majority, but not less than three, of the commissioners present, unless in any case the bylaws of the authority shall require a larger number.
The existence of vacancies in the membership of the Edgewater Park Housing Authority did not affect the ability of that Authority to act, so long as the statutory quorum was present. A contrary rule would be prohibitively onerous. If all seats provided by legislation for a public body were required to be filled before that body could act, through a quorum, it would be denied all power to carry out its responsibilities whenever a vacancy occurred by reason of death, resignation or removal for cause, until the vacancy was filled. It would not be able to fill a vacancy, since it could not act. As a matter of necessity, therefore, the rule must be otherwise, as it is. In Mueller v. *598 Egg Harbor City, 55 N.J.L. 245 (Sup.Ct. 1893) for example, the court said:
In this instance, six members convened and voted for the ordinance. A quorum was, therefore, present, and a majority of the whole number of members voted in the affirmative. The legislative body thus constituted is not rendered incompetent to act, by the death or resignation of one or more of its members, so long as there continues to be the quorum required by the statute.
It has never been supposed that the death of a member of a state legislature suspended its power to enact laws until the vacancy was filled. [at 247]
See, also, Prezlak v. Padrone, supra; Ross v. Miller, 115 N.J.L. 61, 64-66 (Sup.Ct. 1935); Manno v. Clifton, 14 N.J. Super. 100, 102 (App.Div. 1951). A vacancy caused by failure of appointment invites no different rule.
Alternatively, if the irregularities involved in the creation of the Housing Authority and the appointment of its commissioners prevented its de jure operation, actions taken by the commissioners may nevertheless be effective. They were at least de facto officers, whose acts, pursuant to a substantial number of decisions in New Jersey, are valid and enforceable when they involve the public interest and rights of third persons. The concept is thoroughly analyzed in Jersey City v. Civil Service Dep't, 57 N.J. Super. 13 (App.Div. 1959). In that case Judge Goldmann, writing for the Appellate Division, not only explained the established principles relating to the authority of de facto officials, but also the minority rule adopted in New Jersey permitting de facto officials to undertake binding actions even though the organization which they represent is not in existence in a de jure sense. The minority rule would play a part here if both of Edgewater Township's housing authority ordinances were struck down. In Jersey City, supra, at 27 the court, quoting from State v. Carroll, 38 Conn. 449, 471-472 (Sup.Ct.Err. 1871), adopted the following definition of de facto officers:
An officer de facto is one whose acts, though not those of a lawful officer, the law, upon principles of policy and justice, will hold valid so far as they involve the interests of the public and third persons, where the duties of the office were exercised.
First, without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without *599 inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be.
Second, under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent requirement or condition, as to take an oath, give a bond, or the like.
Third, under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defect being unknown to the public.
Fourth, under color of an election or appointment by or pursuant to a public unconstitutional law, before the same is adjudged to be such.
With these observations, the court went on to hold that the acts of a de facto officer, with respect to third persons, were valid whether the organization she represented was de jure or legally nonexistent, provided their recognition did not produce mischievous results.

D. The Term of Charles Crook

Charles Crook was appointed a commissioner on March 11, 1981. The first meeting of the Authority occurred on March 25, 1981. There is split authority in New Jersey as to whether the term of an appointed official begins on the date of his appointment or on the date the duties of his office are assumed. Rightmire v. Duffield, 50 N.J.L. 43 (Sup.Ct. 1887); Haight v. Love, 39 N.J.L. 14 (Sup.Ct. 1876). Which approach is to be taken in the case of Charles Crook? The one adopted here is that the date of appointment is the date that counts, absent, as here, any question of acceptance. This provides certainty and recognizes the fact that some obligations of office, e.g., avoidance of various conflicts of interest, arise at the moment of appointment. Further, it is a date easily ascertained. I therefore hold that the term of Charles Crook commenced on March 11, 1981 and ended on March 10, 1982.
This conclusion, for good reasons, ignores the certificate of appointment given to Charles Crook by the Mayor of Edgewater Park. The certificate stated that his term of office commenced on August 26, 1981. N.J.S.A. 55:14A-6 provides, in part, as follows:

*600 All commissioners shall hold office until their successors have been appointed and have qualified. A certificate of the appointment or reappointment of any commissioner shall be filed with the clerk and such certificate shall be conclusive evidence of the due and proper appointment of such commissioner. . .. [Emphasis supplied]
Defendant argues that the certificate, including the date established therein for the commencement of the term of office, is conclusive by virtue of this statute. Note, however, that the statute does not say that the certificate is "conclusive evidence of the date of the commencement of the term of office of a commissioner"; it is said to be conclusive evidence only of the "due and proper appointment of such commissioner." The certificate, therefore, does not control the commencement question. Beyond this, N.J.S.A. 55:14A-6 could not be interpreted as authorizing a certificate to constitute "conclusive evidence" unless there had been a lawful exercise of the appointive authority establishing the date set forth in the certificate. In the present case it is entirely clear that the term of office of Charles Crook could not have commenced on August 26, 1981. The township committee made no appointment on that date. The mayor had no authority to make the appointment. The March 11 appointment had been made by the governing body, by formal action; it could not be changed by the mayor through the simple expedient of signing a certificate. Consequently, the certificate is not "conclusive evidence" that the term of Charles Crook began August 26, 1981. On the contrary, as concluded above, it commenced on March 11, 1981, the date of his appointment.

E. Attorney Fees

The next challenge is to the payment of attorneys' fees by the Authority. In a prior ruling I prohibited such payment, for three reasons: failure by the Authority to comply with N.J.S.A. 40:55D-31, which prohibits the expenditure of monies before presenting an initial plan to the planning board, failure to enter into a written contract, as required by the Local Public Contracts Law, N.J.S.A. 40A:11-5(1)(a)(i), and failure to advertise proper notice of the contractual arrangements, as required *601 by N.J.S.A. 40A:11-5. Defendant now suggests that such fees may be paid under the equitable doctrine of quantum meruit. As a general rule, damages for breach of an unlawful public contract would be denied whether sought under the contract or on a quantum meruit basis. Manning Engineering v. Hudson Cty. Park Comm'n, 74 N.J. 113, 138 (1977); Home Owners Constr. Co. v. Glen Rock, 59 N.J. Super. 519, 528-30 (App.Div. 1960). In both of the cited cases, however, the violations of statutory contractual requirements were intentional. There were indications of corruption. When the exercise of the municipal power is one that is authorized but irregular, and corruption is absent, it appears that quantum meruit recoveries have been allowed. Thus, in Hudson City Contracting Co. v. Jersey City Incinerator Auth., 17 N.J. 297 (1959), the court said:
Where the power to contract lies within the competence of the municipal corporation and there has been an irregular exercise of that power in good faith, recovery on a quantum meruit may be had, although the express contract is void. [at 309]
See, also, Eckert v. West Orange, 90 N.J.L. 545 (E. & A. 1917); Armitage v. Essex Const. Co., 88 N.J.L. 640 (E. & A. 1916); S.H. Roemer Co. v. Camden Cty., 91 N.J. Super. 336 (Law Div. 1966). The reasonable value of services may be recovered, not the contract sum. Lake Intervale Homes v. Parsippany-Troy Hills, 28 N.J. 423, 431 (1958).
The quantum meruit theory presents difficulties in the present case. It would permit the violation of our Municipal Land Use Law, N.J.S.A. 40:55D-31, with impunity, in addition to permitting a disregard of the statutes relating to contracts for professional services. The equities are countervailing, and I conclude that fees may not be recoverable here on a quantum meruit basis. Nevertheless, there are real problems in the interpretation of the statutes in question and real difficulties facing attorneys in these circumstances. Professional fees of this kind are very difficult to estimate. When litigation occurs, as here, the responsibilities of counsel are unknown; suits may be settled quickly or may continue interminably. There is no question of good faith or of the need for the services performed *602 in the present case. If the Authority could not employ counsel for the purpose of defending the within action, plaintiff would win by default. This is a matter of public concern; no party, in such circumstances, should be denied a day in court. Some method needs to be found to protect public bodies as well as attorneys in these straits.
The Municipal Land Use Law and the Local Public Contracts Law, both of which were violated here, were adopted for the purpose of protecting the public. The Authority was not to proceed with its plan, to the extent of obligating itself to pay any money, until it had received a preliminary review by the planning board. It was not to pay fees to its attorneys unless the public was given notice of the terms of its fee agreement. These requirements can be satisfied through ratification procedures. The Authority had the power to contract with counsel for needed professional services; its exercise of that power was irregular, not void. Irregular actions by municipal bodies may be ratified. DeMuro v. Martini, 1 N.J. 516, 522 (1949); Houman v. Pompton Lakes, 155 N.J. Super. 129, 160-161 (Law Div. 1977); Riddlestorffer v. Rahway, 82 N.J. Super. 36, 53 (Law Div. 1963); McQuillin, Municipal Corporations (3 ed.rev. 1981), § 29.104 at 481. The Authority may therefore ratify its employment of counsel and authorize the payment of fees incurred, provided the ratification proceedings occur after there has been compliance with the Municipal Lane Use Law and the Local Public Contracts Law.[1]

F. The Sunshine Law

Finally, plaintiff contends that the Authority violated the Sunshine Law, N.J.S.A. 10:4-13, which provides:
No public body shall exclude the public from any meeting to discuss any matter described in [N.J.S.A. 10:4-12.5] until the public body shall first adopt a resolution, at a meeting to which the public shall be admitted.... [Emphasis supplied]
*603 The Authority met in closed session on May 6, 1982, after adoption of an oral resolution. There are factual differences concerning its adoption and its content which cannot be decided here. The only issue presented is whether the statute required the resolution to be in writing. I conclude that a writing was not necessary. In the first place, the statute does not require a writing. In the second place, the intention of the statute is as well satisfied by an oral resolution as by a written one. In the usual situation, a written resolution is read for the benefit of all persons in attendance at a subject meeting, and then memorialized in the minutes of the meeting. The writing itself is thereafter of no value. Here, the oral resolution was memorialized in the minutes of the meeting, and was equally effective.
It should also be noted, although the question was not argued, that the Sunshine Law may not be raised as an objection to municipal action unless suit is brought within 45 days of the date such action was taken. N.J.S.A. 10:4-15(a). Consequently, the challenge here comes too late.
NOTES
[1] The same approach is available to the Authority with respect to architect's fees.