LARIO, J.T.C.
The taxpayer, Atlantic Deauville, Inc. (Deauville), has filed a consolidated motion for summary judgments (a) dismissing Atlantic City’s three counterclaims and (b) dismissing the city’s two complaints filed in the above matters.
Deauville is the owner of three separately assessed lots located in Atlantic City, known as Block 12, Lots 13 and 14, and Block 13, Lot 3. For the tax year 1981 it appealed the three assessments to the Atlantic County Board of Taxation and received three judgments reducing the assessments on the three lots. On December 8, 1981 Deauville filed with this court the three instant appeals from said judgments seeking further reductions. In response to these complaints, on December 15,1981 the law firm of Skoloff and Wolfe, P.A. (S & W), as special tax counsel for the city, filed answers and counterclaims in all three matters whereby it denied the allegations in plaintiff’s complaints and sought judgments increasing each assessment.
On December 28, 1981, S & W, as attorneys for Atlantic City, filed two separate cross-complaints against Deauville, the first covering Lot 3 and the second covering Lots 13 and 14. In both complaints it alleges that the city was discriminated against by the assessed valuations and sought an increase in all three assessments.
On December 30, 1981, two days after the cross claims were filed, the city, at a special meeting of its board of commissioners, adopted a resolution to retain the “professional legal services of Skoloff and Wolfe, Esquires ... as Special Tax Counsel, to handle certain tax appeals on behalf of the city of Atlantic City.”
On November 22, 1982 the taxpayer filed this motion for summary judgments alleging: (a) S & W was not authorized to institute the counterclaims and complaints on behalf of the city when it filed same, and the resolution adopted two days later appointing S & W special counsel was ineffective; (b) the resolution was an improper ratification in that it failed to specify these tax appeals; (c) the resolution was invalid because it was adopted at a meeting which was held in violation of the *463 Open Public Meetings Act, N.J.S.A. 10:4-6 et seq. (popularly known as the Sunshine Law); and, (d) the relief the city seeks is prohibited by, and in violation of, the statutorily prescribed limits of the Local Government Cap Law, N.J.S.A. 40A:4-45.1 et seq. (Cap Law).
In response to this motion Atlantic City passed a second resolution on November 29, 1982, whereby it confirmed and specified in detail the appointment of S & W as special tax counsel in these matters and it confirmed and verified those actions previously taken by it in these appeals.
Atlantic City is a municipal corporation, and as such, it is well settled in New Jersey that it may act only in accordance with statutory law, or in the absence of such law, it must proceed by ordinance, resolution or an equivalent formal undertaking. Anschelewitz v. Belmar, 2 N.J. 178, 65 A.2d 825 (1949); Woodsum v. Pemberton Tp., 172 N.J.Super. 489, 412 A.2d 1064 (Law Div.1980), aff’d, 177 N.J.Super. 639, 427 A.2d 615 (App.Div. 1981); Houman v. Pompton Lakes, 155 N.J.Super. 129, 382 A.2d 413 (Law Div.1977). This principle applies equally to actions instituted in the Tax Court. As recently stated in Clinton Tp. Citizen’s Comm. v. Clinton Tp., 185 N.J.Super. 343, 353, 448 A.2d 526 (Law Div.1982), “as a matter of law a taxing district acts by resolution of its governing body in initiating and participating in litigation in the Tax Court.... ”
In response to the taxpayer’s allegations (a), (b) and (c) that the actions filed on behalf of the city were unauthorized and that the December 30,1981 resolution was improper and invalid, the city contends that these issues are now moot, citing the second resolution passed on November 29, 1982. This second resolution sets forth the city’s findings that it had been discriminated against by the assessed valuation of the subject properties; it specifically confirms and ratifies the retention of the firm of S & W as special tax counsel for these matters; and, it confirms and ratifies the action of the filing of the complaints and counterclaims in issue.
Taxpayer replies: (1) that the second resolution is not a lawful ratification in that it
*464 ... does not ratify a previous authorization to assert a claim. Rather, the November 29,1982 resolution purports to ratify the acts of non-Board members, acting on their own initiative and without any authority. While the Board may be entitled to prospectively authorize such an act, and thereby adopt the same for its own, it certainly cannot do so retroactively.
(2) Even if the second resolution constitutes a ratification, since the alleged ratification was adopted during the pendency of this action, the motion for summary judgment must be granted in that an executive or administrative body may not ratify or amend an act or resolution while that act or resolution is subject to litigation. In support thereof, plaintiff relies upon Morton v. Clark Tp., 102 N.J.Super. 84, 245 A.2d 377 (Law Div.1968), aff'd per curiam, 108 N.J.Super. 74, 260 A.2d 5 (App.Div.1969) and Kramer v. Sea Girt Bd. of Adjust., 80 N.J.Super. 454, 194 A.2d 26 (Law Div.1963), aff'd, 45 N.J. 268, 212 A.2d 153 (1965), concluding therefrom that the attempted ratification is a nullity.
The issues to be resolved at this point are whether the retaining of special counsel and filing by it of these actions can lawfully be ratified by a subsequent resolution; and, if so, if either of the two resolutions was in fact a valid ratification.
The principles of ratification were extensively explored in Houman v. Pompton Lakes, supra as follows:
The general rule of ratification of prior acts is stated in 4 McQuillin, Municipal Corporation, § 13.47 at 563:
Generally, a governmental body may effectively ratify what it could theretofore have lawfully authorized. Ratification after the Act is said to be as potent as authority before the Act. Irregular and void (voidable) acts may be ratified or confirmed at a subsequent meeting, provided it is a valid or legal meeting. [Citations omitted]
Whatever a public body may authorize, it may subsequently ratify, and such ratification, being equivalent to an original grant of power, is operative and relates back to the date of the original action which is subsequently being ratified. [Citations omitted]. Ratification is equivalent to previous authorization and relates back to the time when the Act ratified was done. 75 C.J.S., Ratification, at 608. A ratification is, in its effect upon the act of an agent, equivalent to the possession by the agent of a previous authority and operates upon the act ratified in the same manner as though the authority of the agent to do the act existed originally. Marsh v. Fulton Cty., 10 Wall 676, 77 U.S. 676, 19 L.Ed. 1040 (1871).
These basic principles of ratification have been applied by the New Jersey courts, which have consistently held that where a public body has the power and authority to enter into an agreement, but has failed to follow proper procedures in exercising that authority, it may subsequently ratify the agreement. [Cita *465 tions omitted]. These decisions draw a distinction between agreements that are ultra vires in the primary sense, being entirely beyond the scope of municipal authority, and those which are ultra vires in the secondary sense, being deficient for failure to proceed in a proper manner. Those agreements which are merely ultra vires in the secondary sense may be subsequently ratified by the municipality. [155 N.J.Super. at 159-160, 382 A.2d 413].
When S & W filed the pleadings in question the city had not lawfully adopted resolutions authorizing either the retention of counsel or the acts taken; however, the actions complained of were not beyond the scope of the municipality’s authority. A judgment issued by a county board of taxation in a local property tax appeal may be appealed to this court by either or both parties. When the appeal is filed by a taxpayer, the taxing district has the right (and probably the obligation) to defend same and logically it has the power to retain legal counsel to defend the appeal and to counterclaim. Although a formal answering pleading is not required, R. 8:3-2, if an answer or answer and counterclaim is filed it must be filed within 20 days of service of the complaint. R. 8:4-3; R 4:6-1. It is obvious that the city desired to defend these complaints and to counterclaim. Since the city is a municipal corporation, it is permitted to file pleadings in our courts only through an attorney authorized to practice in this state. R. l:21-l(c). Presumably the city’s actions in retaining counsel and directing the filing of its pleadings, without a proper resolution having been first adopted, were based on its realization that it was compelled to comply with the aforesaid rules of court.
Admittedly, at this point in time, the city had proceeded without a lawfully adopted resolution; however, the violations were not corrupt, but instead were actions taken in good faith to protect the city’s tax base and the interest of all other taxpayers. When the power is one that lies within the competence of the municipal corporation and there has been an irregular exercise of that power, absent corruption and bad faith, the irregularity may be remedied. Hudson City Contracting Co. v. Jersey City Incinerator Auth., 17 N.J. 297, 309, 111 A.2d 385 (1955). It is apparent that the city’s actions, the hiring of special tax counsel and directing it to defend and counterclaim without the adoption of a resolution, were ultra vires in the *466 “secondary sense” as defined in Houman, in that they were deficient for failure of the city to proceed in a proper manner; therefore, the actions may be subsequently ratified by the municipality.
The resolutions adopted by the city at both its meetings of December 30, 1981 and November 29, 1982 were intended as complete ratifying actions. The second resolution is very definite and specific and there being no contention that it is defective on other procedural grounds, the resolution is an effective ratification of the hiring of S & W as special legal counsel and it also effectively ratified the actions taken by S & W in these proceedings. Since this later resolution is a lawful ratification, it is not necessary to ascertain whether the first resolution is a lawful ratification.[1]
The court has been unable to find, and counsel has not cited, any statutory or reported authority to sustain plaintiff’s contention that ratification almost one year after the action complained of is void. Nor is there any authority for plaintiff’s allegation that council can only ratify the actions of a board member. One of the issues involved in Edgewater Pk. Tp. v. Edgewater Pk. Housing Auth., 187 N.J.Super. 588, 455 A.2d 575 (Law Div.1982) was the right to pay attorney’s fees where the authority’s original employment of its attorney was declared procedurally improper. Judge Haines held that although the authority was previously ordered not to pay fees to its attorneys unless certain requirements were first satisfied,
[t]hese requirements can be satisfied through ratification procedures. The Authority had the power to contract with counsel for needed professional services; its exercise of that power was irregular, not void. Irregular actions by municipal bodies may be ratified. [Citations omitted]. The Authority may therefore ratify its employment of counsel and authorize the payment of fees incurred. ... [at 602].
Since the city has the authority to retain legal counsel in these matters, it has the authority to ratify its previous unau *467 thorized hiring. It is also just as clear that it had the authority to ratify the actions of its agent.
Plaintiff’s argument that the city no longer had the power to ratify the actions complained of once those actions became the subject of litigation, is not supported by the cases cited by it. Both Morton v. Clark Tp., supra, and Kramer v. Sea Girt Bd. of Adjust., supra, deal with the issue of whether a municipal board, sitting in its “quasi -judicial” capacity, may take action after it has already made its decision and the decision is under review. As concluded by the Morton court, 102 N.J.Super. at 98, 245 A.2d 377, “... where the governing body acts in a quasi -judicial capacity, it is not vested with the power to reopen and rehear a proceeding which has once been terminated, at least in the absence of fraud, mistake, or substantial change in the prior proceedings.” Both the Morton and Kramer courts recognized the distinction between quasi-judicial actions and legislative actions, and that the prohibition of reconsidering an action applies to the quasi -judicial function only.
Plaintiff has failed to establish that a legislative body, acting in its legislative capacity, does not have the right to reconsider its action when litigation relative to said action is pending. The reported cases have clearly established to the contrary. See Hohl v. Readington Tp., 37 N.J. 271, 181 A.2d 150 (1962). Since the retention of special legal counsel and the authorization of legal proceedings relating to these tax appeals is a legislative function, the city’s right to ratify was not terminated by plaintiff’s motion for summary judgments.
Deauville’s additional objection directed against the first resolution alleging a violation of the Sunshine Law must also be denied for the following reasons. N.J.S.A. 10:4-15 provides in pertinent part:
Any action taken by a public body at a meeting which does not conform with the provisions of this act shall be voidable in a proceeding in lieu of prerogative writ . .. which proceeding may be brought by any person within 45 days after the action sought to be voided has been made public . .. [Emphasis supplied]
The resolution complained of was adopted on December 30, 1981. This action was taken at a public meeting; therefore, *468 any proceeding to void that action was required to have been taken within 45 days thereof. N.J.S.A. 10:4-15; Edgewater Pk. v. Edgewater Pk. Housing Auth., 187 N.J.Super. 588, 455 A.2d 575 (Law Div.1982); West Caldwell v. Lamm Associates, 5 N.J.Tax 338 (1983). Since the defendant’s motion was not filed until almost 11 months thereafter, its objection is out of time.
In addition, assuming arguendo that the first resolution was adopted at a meeting in violation of the Sunshine Law, a municipality may “pursuant to N.J.S.A. 10:4-15, retroactively ratify its action ... provided that [the] meeting fulfilled all the requirements of the act,” Houman v. Pompton Lakes, supra 155 N.J.Super. at 165, 382 A.2d 413, and was a hearing de novo. N.J.S.A. 10:4-15(a). Accordingly, the second resolution was also a ratification passed in accordance with the remedial provision of N.J.S.A. 10:4r-15(a).
The final issue to be addressed is Deauville’s claim that the' relief sought by the city is prohibited as being in violation of the Cap Law. A review of this statute clearly indicates that the taxpayer’s argument is without support or merit. The legislative purpose of this law was to prevent the spiraling costs of local government and concomitant severe impact upon homeowners by increased taxation. N.J.S.A. 40A:4-45.1. New Jersey’s Constitution, N.J.Const. (1947), Art. VIII, § 1, par. 1, requires that “[p]roperty shall be assessed for taxation under general laws and by uniform rules. All real property ... shall be assessed according to the same standard of value.... ” N.J.S.A. 54:4-23 requires that all property shall be assessed on October 1 of the pre-tax year, at which time “[t]he assessor shall ... determine the full and fair value of each parcel.... ”
On appeal from a judgment of the county board, this court is required to ascertain the property’s correct assessment. Rabstein v. Princeton, 187 N.J.Super. 18, 453 A.2d 553 (App.Div. 1982). There is nothing in the Cap Law to support the taxpayer’s argument, which would, in effect, repeal a municipality’s right to file an appeal from either its own assessment as *469 authorized by N.J.S.A. 54:3-21, or from a county board judgment, to increase an assessment to its correct figure as authorized by N.J.S.A. 54:51A—1. To accept the taxpayer’s contention the Added Assessment Law, N.J.S.A. 54:4-63.1 et seq., the Omitted Assessment Laws, N.J.S.A. 54:4-23.8 and N.J.S.A. 54:4-63.31 et seq., and the Farmland Assessment Rollback Law, N.J.S.A. 54:4-23.8, would be meaningless.
The taxpayer misunderstands the function of assessments. The total assessments of a community as reported by the assessor are completed and filed with the county board by January 10, N.J.S.A. 54:4-35, and equalized by the county board of taxation on or before March 10. N.J.S.A. 54:3-18. The municipality’s budget is adopted not later than March 20. N.J.S.A. 40A:4-10. The determined amount of revenue to be raised by local property tax is then divided by the assessments to ascertain the tax rate. The Cap Law prohibits municipalities from increasing their final appropriations by more than 5% over the previous year, N.J.S.A. 40A:4-45.2, but there is no prohibition against increasing assessments. To conclude that the Cap Law was intended to preclude a municipality from taking any action theretofore authorized by statute to increase, add or appeal assessments would be an absurd interpretation.
For all of the above reasons the motion filed by Deauville is denied.

See generally, Clinton Tp. Citizen’s Comm. v. Clinton Tp., supra 185 N.J.Super. at 352, 448 A.2d 526. (resolution can be made in the most general terms.)